[Crim. No. 1736.   Third Appellate District.—September 20, 1940.]

THE PEOPLE, Respondent, v. FRED BUTTERFIELD, Appellant.

Elliott, Veeder, Sullivan & Dunham and Harrison M. Dunham for Appellant.

Earl Warren, Attorney-General, and J. Q. Brown, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendant has appealed from a judgment of conviction of murder of the second degree which was rendered against him pursuant to the verdict of a jury.

The cause was previously heard by this court on a petition for a writ of *coram nobis* (*People* v. *Butterfield,* 37 Cal. App. (2d) 140 [99 Pac. (2d) 310]), which was granted on the ground that the defendant was wrongfully induced to plead guilty to the charge of murder by his cellmate named England, and thus prevented from having a trial by jury. The defendant was subsequently permitted to withdraw his plea of guilty and he thereupon entered a plea of not guilty. He was formally tried with a jury which rendered a verdict

against him of murder of the second degree. Judgment was duly rendered and he was sentenced to imprisonment in San Quentin state prison for the term prescribed by law. From that judgment he has appealed.

It is contended the verdict and judgment are not supported by the evidence and that the trial judge was guilty of prejudicial conduct in propounding certain questions to the defendant in the course of his examination as a witness at the trial.

Briefly, the facts upon which the defendant was convicted are as follows: He was living with his parents on a farm in Lake County which is situated three miles from Kelseyville. He was employed elsewhere as a farm hand. Several witnesses testified to his previous good character for peace and quiet. He was, however, addicted to the inordinate use of liquor under the influence of which he was sometimes quarrelsome. He was once convicted of the theft of an automobile under section 503 of the Vehicle Code. He was impeached at the trial by evidence of that conviction. The deceased was an itinerant fruit picker in poor health who lived with a partner in a temporary camp near Kelseyville. The evening before the homicide the defendant met Abraham Lee, for the first time, in Kelseyville. They spent the night together, on good terms, drinking beer in various saloons. After midnight they started together for their respective homes. The deceased was carrying a loaf of bread and a jug of wine. Neither of them was armed with a weapon. They followed a roadway paralleling the creek a short distance therefrom. The defendant stepped on a stone and stumbled against the deceased, who cursed and struck him with his fist, inflicting no injury. The defendant had no fear of the deceased, but he picked up a stone or a club and struck his companion on the head above his left ear. He fell to the ground and remained there unconscious. The defendant examined him and dragged his body from the roadway where he left it and then started toward home. After traveling a couple of hundred feet, he returned and dragged the body further into the bushes adjacent to the stream, where he covered it with brush. He then proceeded to his home, taking from a bureau drawer $28, which he had placed there. He drew a check in favor of his mother on an account in a Kelseyville bank, and handed it to her, telling her to forward the cash

to him at Santa Rosa. He immediately left home, going to San Francisco by way of Santa Rosa, and thence to Bellingham, Washington, where he spent two or three weeks and then returned to his home. He was promptly apprehended and charged with the murder of Abraham Lee. He first denied participation in the homicide, but later acknowledged the killing of Lee under the circumstances above related. His story contained inconsistencies. He assumed to have a very hazy recollection of the immediate circumstances of the killing.

It was ten days after the homicide that the officers discovered the body which was completely covered with driftwood and brush. They found his pants pockets pulled out as though someone had searched them for money or valuables. A post mortem examination of the body disclosed the fact that the skull was not fractured, but there was evidence of a bruise and hemorrhage over the left ear which a physician said were caused by a severe blow with a blunt instrument. There is no doubt that said blow caused the death of Mr. Lee.

After the arrest of the defendant, he was placed in the same cell with another prisoner by the name of England, who persuaded him to plead guilty to the charge of murder. Upon petition for a writ of *coram nobis* the defendant was permitted to withdraw his former plea of guilty, and he thereupon entered a plea of not guilty. He was formally tried by a jury and found to be guilty of murder of the second degree.

■ The verdict and judgment are supported by the evidence. The facts of this case as they appeared in the proceeding for a writ of *coram nobis* were reviewed with the sole object of determining whether the petitioner had been wrongfully deprived of a trial by jury, and not to determine his guilt or innocence of the charge of murder which was preferred against him. Upon this trial it was the province of the jury to determine the weight and sufficiency of the evidence to support the verdict, and the credibility of witnesses. At the trial of this case serious discrepancies in the statements of the defendant appear, together with numerous circumstances in his conduct occurring after the commission of the homicide which the jury was warranted in assuming indicated his guilt of the crime of murder of the second degree. Although it seems improbable, as stated in our opinion in the *coram nobis* proceeding, that the defendant would deliberately kill, with the purpose of robbery, an impecunious itinerant fruit picker

with whom he had spent the evening on good terms, the evidence in this case warranted the jury in assuming that he did deliberately strike the deceased ''with a rock or club'' on the left side of his head with such force as to kill him, for no better reason than that the deceased had previously cursed and struck the defendant for stumbling against him.

When an unlawful assault is made with a deadly weapon upon the person of another, resulting in death, and the assault is not provoked or perpetrated in necessary self-defense, or in the heat of passion, malice may be presumed. Under such circumstances, the killing may constitute murder of the second degree when it is not perpetrated by means of poison, lying in wait, torture or any other kind of wilful, deliberate or premeditated killing. (*People* v. *Howard*, 211 Cal. 322, 329 [295 Pac. 333, 71 A. L. R. 1385] ; *People* v. *Hubbard*, 64 Cal. App. 27, 37 [220 Pac. 315] ; *People* v. *Semone*, 140 Cal. App. 318, 323 [35 Pac. 379] ; 13 Cal. Jur. 603, sec. 18.)

In the Howard case, *supra*, under circumstances quite similar to the present one in most essential respects, the Supreme Court directed the trial court to reduce a verdict of murder of the first degree to second degree murder and thereupon affirmed the judgment of conviction. In that case, the defendant, after having first denied participation in the homicide, acknowledged that he struck the blow that resulted in the death of his victim, but asserted that he did so only to repel an assault upon himself by the deceased who was the aggressor in a quarrel which occurred between them. The court said in regard to the effect of that undisputed evidence:

''If, as urged by the People, the jury in weighing and considering the evidence might properly reject as untrue that portion of the confession wherein defendant charged the decedent with having been the aggressor in a quarrel which led up to the homicide, there remains no evidence from which it might reasonably be deduced that the killing was the result of a wilful, deliberate and premeditated intent to kill. We do not question the propriety of the jury's action in rejecting any portion of the defendant's evidence or confession which to it was unworthy of belief. . . . If it be assumed that the jury accepted defendant's confession in toto, the offense would still be that of second degree murder, for defendant did not satisfactorily establish such provocation as would excuse the homicide or reduce it to manslaughter.''

■ The above-quoted language of the Howard case is peculiarly applicable to the present situation. When this defendant was first apprehended he denied he knew anything about the death of Mr. Lee. Later he acknowledged that as they walked together along a road on their way home after spending the night in drinking beer, he stepped on a rock and stumbled against his associate; that Lee thereupon cursed and struck him without inflicting any injury. The defendant admitted that he was not afraid of the deceased. He said that he had no occasion to fear him. Yet he later admitted that he thereupon struck the deceased who fell to the ground as a result of his blow and that he did not arise. He admitted that he dragged the body from the roadway and concealed it beneath a pile of brush. Both the sheriff and the probation officer testified that defendant told them that when the deceased cursed him he "picked up a hard substance" or a "rock or club" and hit him with it. Accepting the defendant's story as true, the conduct of the deceased under the circumstances related did not justify the defendant in striking him on the head with a deadly weapon. The question as to whether he was struck in the heat of passion was for the jury to determine. As stated in the Howard case, *supra,* the jury was authorized to reject any portion of the defendant's testimony which they did not believe. His guilt is supported by evidence of an unjustifiable assault with a deadly weapon and by the fact that the defendant dragged the body of his victim from the roadway into a thicket and concealed it from view by covering it with brush and driftwood, by his failure to inform anyone of the homicide; by drawing his money from the bank and fleeing to Bellingham, Washington, together with certain inconsistencies in his story of the affair. It is true that he subsequently returned to his home but these incriminating circumstances indicate guilty knowledge on his part. We have no doubt the judgment and verdict of murder of the second degree are amply supported by the evidence. While we are inclined to believe the homicide was the result of a drunken quarrel and may amount to no higher offense than that of manslaughter, we realize it was the sole province of the jury to determine the weight and sufficiency of the evidence and the credibility of the witnesses. There are facts sufficient to support the finding of murder of the second degree, which we are not warranted in disturbing.

■ The trial judge is charged with prejudicial misconduct in indicating to the jury by his personal cross-examination of the defendant that he believed him to be guilty of murder and that his testimony was wilfully false. We have carefully read the record in that regard and are of the opinion the challenged questions were not prejudicial. ■ It is true that a trial judge should participate in the examination of witnesses in a criminal case in so fair and impartial a manner as to avoid conveying to the jury an impression that he thinks the defendant is guilty of the offense with which he is charged and that he desires them to return a verdict of his conviction. The court is required to instruct the jury that it is the exclusive judge of all questions of fact and of the credibility of the witnesses. (Sec. 1439, Pen. Code.) That instruction was given to the jury in this case. The section last mentioned authorizes the court to ''comment on the failure of the defendant to explain or to deny by his testimony any evidence or facts in the case against him''. That section also authorizes the court to ''make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the case''. A trial judge certainly is authorized on cross-examination of a defendant to call his attention to apparently conflicting statements which he has made so as to give him an opportunity to explain or reconcile them if possible. ■ We are of the opinion it is not only the privilege but the duty of a trial judge to ask questions of any witness in a fair and discreet way to elicit facts which are material to a just determination of the case. It has been held the judge is not a mere umpire for the determination of legal questions which are involved in the trial of a case. Of course a judge should not examine a defendant on trial for a crime in such a manner as to give the jury an impression that he thinks the accused is guilty of the charge and should be convicted. It is apparent such conduct would nullify the right of trial by jury. Upon examination of the record in the present case we find no evidence of such conduct on the part of the trial judge. It appears that in good faith the judge upon two or three occasions, in a fair and discreet manner, inquired of the defendant if he had not previously made statements in conflict with the testimony which he gave at the trial. In each instance the court quoted former statements of the defendant which do appear to be in conflict with

his testimony at the trial. At least these apparent conflicts of evidence did require explanation or reconciliation. We find no prejudicial misconduct of the trial judge in his cross-examination of the defendant.

The judgment is affirmed.

Tuttle, J., and Pullen, P. J., concurred.