[No. C046367. Third Dist. June 17, 2005.]

In re JACOB J., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JACOB J., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

[*]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, II, and IV of the Discussion.

■■■■■■■■
■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

**COUNSEL**

John Hargreaves, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, and John G. McLean, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**HULL, J.**—Seventeen-year-old Jacob J. (the minor) was committed to the California Youth Authority (CYA) for a period not to exceed four years after he admitted possessing cocaine. (Health & Saf. Code, § 11350, subd. (a).) He appeals.

We reject the minor's arguments that the court abused its discretion in committing him to CYA and in denying his motion to modify that commitment.

We hold, however, that the amendments to Welfare and Institutions Code section 731 (further undesignated statutory references are to the Welfare and Institutions Code) require the trial court to set a maximum term of physical confinement at CYA based on the particular facts and circumstances of the matter or matters that conferred jurisdiction over the minor in juvenile court. Because the record does not demonstrate that the trial court set a maximum term of confinement based on the facts and circumstances of this particular case, we remand the matter to the juvenile court for that determination. We also note the trial court failed to complete Judicial Council form JV-732 and direct the court to do so at the further disposition hearing.

### FACTS AND PROCEEDINGS

In February 2002, the minor was declared a ward of the court and placed on probation after he admitted two counts of misdemeanor receiving stolen property. (Pen. Code, § 496, subd. (a).) The offenses occurred in January 2002 when he was found in possession of a Sony Playstation, Playstation games, an X-Box, and additional items that had been reported missing from two separate residences. He was ordered to serve 90 days in juvenile hall and thereafter was released to his mother's home pursuant to electronic monitoring, probation department supervision, and assessment by the drug and alcohol program.

In May 2002, the minor admitted he had violated probation when he repeatedly disrupted his class at school, used profanity, and intimidated and harassed students and faculty. He was continued on probation.

In September 2002, the minor admitted charges of misdemeanor resisting or obstructing a police officer (Pen. Code, § 148, subd. (a)(1)) and possession of marijuana (Health & Saf. Code, § 11357, subd. (b)), charges brought when he fled from officers attempting to take him into custody for a probation violation. At the time of his arrest, he was found to have in his possession two marijuana cigars. In exchange for the minor's admissions, the court dismissed allegations that he failed to attend a drug court meeting and tested positive for tetrahydrocannabinol (THC). He was continued on probation, released to his mother's custody, and required to continue attending drug court.

In October 2002, the probation department alleged the minor had again violated probation by testing positive for THC in September and failing to follow the directives of school officials. The court ordered him detained in juvenile hall, later releasing him on his own recognizance.

In April 2003, the minor admitted violating his probation when he failed to return home on November 10, 2002, and failed to keep the probation department aware of his whereabouts for five months until he was arrested in Alameda County. During that time, he was not enrolled in school, was drinking alcohol two times per week, and smoking marijuana at least once a day. He repeatedly failed to appear in court for his drug court progress report and had an outstanding warrant for his arrest. The day before he was apprehended, the minor had been panhandling at an Oakland gas station and, when asked to leave by the property owner, slashed the tire of the property owner's vehicle. The police were contacted the next day when the minor returned to the gas station to panhandle. As a result of the probation violation, the court ordered the minor detained in juvenile hall.

In October 2003, the minor admitted a charge of possessing cocaine (Health & Saf. Code, § 11350, subd. (a)), which occurred that month when the police stopped him for running a red light and found cocaine underneath the driver's seat. He was ordered placed temporarily at CYA for a 90-day diagnostic study. (Welf. & Inst. Code, § 1731.6.)

While awaiting placement at CYA, in December 2003, the minor admitted a charge of misdemeanor battery (Pen. Code, § 242) that arose from a fight in juvenile hall during which the minor repeatedly struck another inmate in the face.

At the dispositional hearing on February 2, 2004, the court committed the minor to CYA for a period not to exceed six years, calculated as follows: three years for possession of cocaine (Health & Saf. Code, § 11350, subd. (a)), two additional years for two counts of misdemeanor possession of stolen property (Pen. Code, § 496, subd. (a)), and one additional year for resisting or obstructing an officer (Pen. Code, § 148, subd. (a)). The court explained that it committed the minor to CYA because he had a substance abuse problem, which required "a bit more than a 12-step program," because juvenile hall lacked services, because the minor would run away if placed in a nonsecure setting, and because his incarceration would protect society.

On March 15, 2004, the court denied the minor's motion to modify the CYA commitment that had been based on documentation submitted by minor's counsel detailing recent developments regarding treatment of minors at CYA. At the same hearing, the court reduced the minor's maximum term

of physical confinement to four years, in response to a letter sent by CYA indicating that the consecutive term for the misdemeanors was four months instead of one year each.

DISCUSSION

I, II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

III

<em>Court's Discretion to Impose Less than the Adult Maximum<br>Term of Imprisonment for a Minor Committed to CYA</em>

In a supplemental brief, the minor contends the court failed to exercise its recently conferred discretion pursuant to section 731, subdivision (b) to set a maximum term of physical confinement less than the adult maximum term of imprisonment. The People contend the amendments to section 731 are simply a recognition of existing law under section 726, subdivision (c) that gives the court discretion to aggregate the period of physical confinement on multiple counts or multiple petitions, including previously sustained petitions adjudging the minor a ward of the court.

Our role in construing the amendments to section 731 is to " 'ascertain the Legislature's intent so as to effectuate the purpose of the law.' " (*In re J.W.* (2002) 29 Cal.4th 200, 209 [126 Cal.Rptr.2d 897, 57 P.3d 363].) We begin with the words of the statute as they are generally the most reliable indicator of legislative intent. (*People v. Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713].)

From 1979 to 2003, the second paragraph of section 731 read: "A minor committed to the Department of the Youth Authority may not be held in physical confinement for a period of time in excess of the maximum period of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court. Nothing in this section limits the power of the Youthful Offender Parole Board to retain the minor on parole status for the period permitted by Section 1769." (Stats. 1979, ch. 860, § 7, p. 2972; Stats. 1980, ch. 626, § 2, p. 1713.)

---

*See footnote, *ante*, page 429.

In 2003, the Legislature passed Senate Bill No. 459 which amended section 731. (Stats. 2003, ch. 4, § 1, eff. Apr. 8, 2003, operative Jan. 1, 2004.) The amendment rewrote the former second paragraph of section 731 as follows and designated it as subdivision (b): "A minor committed to the Department of the Youth Authority may not be held in physical confinement for a period of time in excess of the maximum period of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court. *A minor committed to the Department of the Youth Authority also may not be held in physical confinement for a period of time in excess of the maximum term of physical confinement set by the court based upon the facts and circumstances of the matter or matters which brought or continued the minor under the jurisdiction of the juvenile court, which may not exceed the maximum period of adult confinement as determined pursuant to this section.* This section does not limit the power of the Youth Authority Board to retain the minor on parole status for the period permitted by Section 1769." (Italics added.)

The definition of "maximum term of imprisonment" applicable to section 731 remains unchanged and "means the longest of the three time periods set forth in paragraph (2) of subdivision (a) of Section 1170 of the Penal Code, but without the need to follow the provisions of subdivision (b) of Section 1170 of the Penal Code or to consider time for good behavior or participation pursuant to Sections 2930, 2931, and 2932 of the Penal Code, plus enhancements which must be proven if pled." (§ 726, subd. (c).)

In plain language, the amendments to section 731 require the court to set the maximum term of physical confinement based on the facts and circumstances of the matters or matters that brought or continued the minor under the jurisdiction of the juvenile court, so long as the term does not exceed the adult maximum period of imprisonment.

The People's position, that the language added to section 731 in subdivision (b) is simply a recognition that under section 726 the juvenile court has discretion to aggregate the period of physical confinement on multiple counts or multiple petitions, is unavailing. "When the Legislature amends a statute, we will not presume lightly that it 'engaged in an idle act.'" (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 935 [22 Cal.Rptr.3d 530, 102 P.3d 915], quoting *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 634 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) Thus, we reject the People's assertion that despite having

substantially reworked the language of section 731 the Legislature intended no change in the law. (See *Elsner v. Uveges, supra,* at p. 935.)

The People add that the construction of section 731, subdivision (b) urged by the minor conflicts with the requirement in section 726, subdivision (c) that the court shall specify that the minor "may not be held in physical confinement for a period of time in excess of the maximum period of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court" (§ 731, subd. (b)), and the definition in section 726, subdivision (c) of "maximum term of imprisonment" as the longest term of imprisonment prescribed by law.

■ On the contrary, the plain language of section 731, subdivision (b) adheres to the definition of the "maximum term of imprisonment" in section 726, subdivision (c) because it mandates that "[a] minor committed to the Department of the Youth Authority may not be held in physical confinement for a period of time in excess of the maximum period of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court. . . ." (§ 731, subd. (b).) Section 731, subdivision (b) requires the court to establish a term of physical confinement, not to exceed the adult maximum period of imprisonment, "based upon the facts and circumstances of the matter or matters which brought or continued the minor under the jurisdiction of the juvenile court . . . ."

■ Even if the plain meaning of the words of the statute was not enough, the legislative history of Senate Bill No. 459 (2003–2004 Reg. Sess.) requires the same conclusion. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 736 [3 Cal.Rptr.3d 636, 74 P.3d 737] [court "may observe that available legislative history buttresses a plain language construction"].) On our own motion, we take judicial notice of the legislative history of Senate Bill No. 459. (Evid. Code, § 452, subd. (c); *Kern v. County of Imperial* (1990) 226 Cal.App.3d 391, 400, fn. 8 [276 Cal.Rptr. 524] [appellate court may take judicial notice of legislative history materials on own motion].) "To determine the purpose of legislation, a court may consult contemporary legislative committee analyses of that legislation, which are subject to judicial notice." (*In re J.W., supra,* 29 Cal.4th at p. 211.) The original committee bill analysis explained, "This bill would authorize the court to additionally set maximum terms of physical confinement in the CYA based upon the facts and circumstances of the matter or matters which brought or continued the minor under the jurisdiction of the juvenile court. This new provision would provide for court consideration of

factors about the offense and the offender's history which would be comparable to those employed now for the triad sentencing of adults, and have those considerations reflected in the CYA confinement term ordered by the court." (Sen. Com. on Public Safety, Rep. on Sen. Bill No. 459 (2003–2004 Reg. Sess.) Mar. 13, 2003, pp. I–J.) The use of the word "additionally" and the phrase "new provision would provide for" belie the People's assertion that the amendments were simply clarification of existing law.

Our reading of section 731, subdivision (b) is further supported by a later committee report that explains that the bill "[a]uthorizes the court to set a maximum term of confinement that is not necessarily the adult term maximum." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 459 (2003–2004 Reg. Sess.) as amended Mar. 17, 2003, p. 3.)

Finally, the arguments in support of the bill that were included in the state Senate's bill analysis add additional weight to our plain reading of section 731, subdivision (b). (Sen. Rules Com., Off. of Sen. Floor Analysis, Rep. on Sen. Bill No. 459 (2003–2004 Reg. Sess.) as amended Apr. 3, 2003, p. 9.) Supporters of the bill recount that "by realigning this authority, the system will achieve greater local control, enhance accountability at CYA and provide better outcomes for youth resulting in improved public safety." They further explain that "they support the proposal to involve the county juvenile justice systems in determining the treatment programs and length of stay of the young people they commit to CYA," because "[t]he juvenile court judges and probation officers know the wards and understand what rehabilitation efforts are needed before the young offenders can return to their communities." (*Ibid.*)

The foregoing legislative history of Senate Bill No. 459 leaves no doubt in our mind that the amendments to section 731 were intended to give the juvenile court discretion to impose less than the adult maximum term of imprisonment when committing a minor to CYA and to require the court to set that term of confinement based on the facts and circumstances of each case. (§ 731, subd. (b).) Our holding expresses no opinion on the applicability of these amendments to the calculation of confinement times for minors placed outside CYA.

The minor contends the trial court failed to comply with section 731, subdivision (b). He argues the trial court failed to exercise the discretion granted by the new statute.

■ On a silent record, the "trial court is presumed to have been aware of and followed the applicable law" when exercising its discretion. (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496 [62 Cal.Rptr.2d 268]; accord, Evid.

Code, § 664.) The appellate court cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of its discretion. (*People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1521–1523 [56 Cal.Rptr.2d 749]; *People v. Davis* (1996) 50 Cal.App.4th 168, 170–173 [57 Cal.Rptr.2d 659].)

■ But we think the matter goes somewhat beyond the question of whether the juvenile court was aware of and exercised the discretion granted by the statute. Given the wording of the statute and its legislative history, where, as here, the juvenile court sets the maximum term of physical confinement at CYA at the maximum term of an adult confinement, the record must show the court did so after considering the particular facts and circumstances of the matter before it. We reach this conclusion considering not only the wording of the amendment to the statute, which we have discussed, but also the structure of the statute after its amendment. Before the statute was amended, it said the maximum term of physical confinement at CYA could not exceed the maximum period of imprisonment that could be imposed on an adult convicted of the same offenses. After its amendment, the statute spoke of a second and separate, although perhaps not different, period of physical confinement, that is, confinement set by the court given the particular facts and circumstances of the case under consideration. When the court has stated only the maximum term of confinement that could have been imposed on an adult and is silent as to a maximum term based on the facts of the case, it has not spoken to the second, separate maximum called for by the amended statute.

Thus, while the statute does not require a recitation of the facts and circumstances upon which the trial court depends, or a discussion of their relative weight, the record must reflect the court has considered those facts and circumstances in setting *its* maximum term of physical confinement even though that term may turn out to be the same as would have been imposed on an adult for the same offenses. The juvenile court having failed to set that term, the matter must be remanded to the court for that determination.

IV*

*Judicial Council Form JV-732*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 429.

DISPOSITION

The judgment (order committing the minor to CYA) is reversed. The matter is remanded to the juvenile court with directions to set a maximum term of physical confinement based upon the facts and circumstances of the case and to complete Judicial Council form JV-732 in its entirety and forward a copy of the completed form to CYA.

Morrison, Acting P. J., and Cantil-Sakauye, J., concurred.