[No. C059237. Third Dist. July 2, 2009.]

In re EDDIE L., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
EDDIE L., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts II and III of the Discussion.

COUNSEL

Michael Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette and Michael P. Farrell, Assistant Attorneys General, Michael A. Canzoneri and Barton Bowers, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**SIMS, J.**—Following a contested jurisdiction hearing, the juvenile court sustained a charge of second degree robbery while armed with a firearm against Eddie L., a minor.[1] He was continued as a ward of the court and committed to the Sacramento County Boys Ranch.

On appeal, the minor contends that remand is required for the juvenile court to (1) make a discretionary determination of his maximum period of confinement as provided in Welfare and Institutions Code section 726, subdivision (c) (section 726(c)),[2] and (2) enter the minor's maximum period of confinement in the minutes, and (3) conduct a hearing on whether the minor's mother should be in charge of making his educational decisions.

In the published portion of the opinion, we reject the first contention. As pertinent here, section 726(c) applies to minors who are removed from parental custody but not committed to the Division of Juvenile Facilities (DJF), formerly California Youth Authority (CYA). The statute requires the juvenile court to set the maximum term for such a minor by taking the upper term for the offense and adding a term for any enhancements that have been pled and proved. That is what the juvenile court did here.

In the unpublished portion of the opinion, we agree with the minor's second and third contentions. We shall therefore remand to the juvenile court

---

[1] The minor mistakenly refers to the robbery as being in the first degree. Both the facts and the court's findings show the robbery, which was committed on the street, was second degree. (See Pen. Code, § 212.5.)

[2] Undesignated section references are to the Welfare and Institutions Code.

with instructions to enter the minor's maximum period of confinement in the minutes and to clarify its order with respect to the role of the minor's mother in his education.

## DISCUSSION

### I

■ At the commencement of the disposition hearing, the court stated that it had "sustained Count 1, which is robbery in the second degree, a felony, with a [Penal Code section] 12022[, subdivision] (a)" and that the "maximum jurisdiction would be six years." Six years is the maximum sentence for second degree robbery (five years) with an armed firearm enhancement (one year). (See Pen. Code, §§ 212.5, 213, 12022, subd. (a).)

The minor argues that section 726 contemplates that the juvenile court should not automatically set the statutory maximum term but should rather exercise discretion with respect to setting the minor's maximum term of confinement. For reasons that follow, we do not agree with the minor.

Section 726(c), provides: "If the minor is removed from the physical custody of his or her parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court.

"As used in this section and in Section 731, 'maximum term of imprisonment' means the longest of the three time periods set forth in paragraph (2) of subdivision (a) of Section 1170 of the Penal Code, but without the need to follow the provisions of subdivision (b) of Section 1170 of the Penal Code or to consider time for good behavior or participation pursuant to Sections 2930, 2931, and 2932 of the Penal Code, plus enhancements which must be proven if pled."

■ " 'Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) We must look to

the statute's words and give them their usual and ordinary meaning. (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].) The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' (*Green v. State of California* (2007) 42 Cal.4th 254, 260 [64 Cal.Rptr.3d 390, 165 P.3d 118]; see also *Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 567 [67 Cal.Rptr.3d 468, 169 P.3d 889].) If the words in the statute do not, by themselves, provide a reliable indicator of legislative intent, '[s]tatutory ambiguities often may be resolved by examining the context in which the language appears and adopting the construction which best serves to harmonize the statute internally and with related statutes. (*Woods v. Young* (1991) 53 Cal.3d 315, 323 [279 Cal.Rptr. 613, 807 P.2d 455].)' (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 871 [39 Cal.Rptr.2d 824, 891 P.2d 804].) ' "Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute . . . ; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]." [Citations.]' (*People v. Shabazz* (2006) 38 Cal.4th 55, 67–68 [40 Cal.Rptr.3d 750, 130 P.3d 519].) ▮ If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy. (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].)" (*People v. Arias* (2008) 45 Cal.4th 169, 177 [85 Cal.Rptr.3d 1, 195 P.3d 103].)

The plain meaning of section 726(c) defeats the minor's argument.

▮ The statute says, " 'maximum term of imprisonment' means *the longest* of the three time periods set forth in paragraph (2) of subdivision (a) of Section 1170 of the Penal Code . . . ." (§ 726(c), italics added.) The statute says "the longest" term, not "the most appropriate" term. Moreover, section 726(c) says the maximum term is to be computed "without the need to follow the provisions of subdivision (b) of Section 1170 of the Penal Code . . . ." Subdivision (b) of section 1170 of the Penal Code contains instructions on how a trial court is to exercise its discretion in setting one of the three terms of imprisonment.[3] Read as a whole, section 726(c) provides that resort to the

---

[3] Penal Code section 1170, subdivision (b), provides: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. At least four days prior to the time set for imposition of judgment, either party or the victim, or the family of the victim if the victim is deceased, may submit a statement in aggravation or mitigation. In determining the appropriate term, the court may consider the record in the case, the probation officer's report, other reports including reports received pursuant to Section 1203.03 and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing. The court shall select the term which, in the court's discretion, best serves the interests of justice. The court shall set forth on the record the reasons for imposing the term selected and

guidelines for sentencing discretion found in Penal Code section 1170, subdivision (b), is unnecessary because the juvenile court is directed to impose the upper term.

■ This is precisely the construction of section 726(c) adopted in *In re Christopher B.* (2007) 156 Cal.App.4th 1557 [68 Cal.Rptr.3d 253]: "The [determinate sentencing law] also sets the outer maximum period of physical confinement for minors who have committed a felony and are ordered removed from their parents or guardians. That period is the maximum term of imprisonment which could be imposed on an adult who committed the same offense. For a single offense the period is the upper DSL term, determined without the need to consider aggravating or mitigating factors or time for good behavior or participation, plus enhancements, if pled and proven. (§ 726[](c); see § 731, subd. (b).)" (*Id.* at pp. 1564–1565, fn. omitted.)

■ The foregoing conclusion is bolstered by additional statutory construction. "It is assumed that the Legislature has in mind existing laws when it passes a statute. [Citations.] 'The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other respects are made is indicative of an intent to leave the law as it stands in the aspects not amended.' " (*Estate of McDill* (1975) 14 Cal.3d 831, 837 [122 Cal.Rptr. 754, 537 P.2d 874].)

Prior to January 1, 2004, section 731, which governed the commitment of wards to what at that time was the CYA,[4] directed the juvenile court to determine the ward's maximum period of confinement. (See Stats. 1980, ch. 626, § 2, pp. 1712–1713.) Section 726(c), as noted above, imposed upon both sections 726 and 731 the same formula to be used in determining the ward's maximum period of confinement, to wit, the longest of the three time periods for which an adult could be imprisoned, but without the need to consider and weigh aggravating or mitigating circumstances. (See Stats. 2002, ch. 180, § 3.)

Operative January 1, 2004, the Legislature reorganized section 731 into subdivisions, placing the determination of the ward's maximum period of confinement in former subdivision (b), and amending the section to provide for an additional determination of the ward's maximum period of confinement to CYA "based upon the facts and circumstances of the matter or matters which brought or continued the minor under the jurisdiction of the juvenile court . . . ." (Stats. 2003, ch. 4, § 1, eff. Apr. 8, 2003, operative Jan.

---

the court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law. A term of imprisonment shall not be specified if imposition of sentence is suspended."

[4] As we noted earlier, the CYA is now the DJF.

1, 2004.) Section 731 was again amended in 2007 and subdivision (b) was placed, without substantive change, in subdivision (c). As presently written, subdivision (c) of section 731 reads in relevant part: "A ward committed to the [DJF] may not be held in physical confinement for a period of time in excess of the maximum period of imprisonment that could be imposed upon an adult convicted of the offense or offenses that brought or continued the minor under the jurisdiction of the juvenile court. A ward committed to the [DJF] also may not be held in physical confinement for a period of time in excess of the maximum term of physical confinement set by the court based upon the facts and circumstances of the matter or matters that brought or continued the ward under the jurisdiction of the juvenile court, which may not exceed the maximum period of adult confinement as determined pursuant to this section." (Stats. 2007, ch. 175, § 19.)

Both this court (*In re Jacob J.* (2005) 130 Cal.App.4th 429, 434–437 [30 Cal.Rptr.3d 255]) and Division Two of the Court of Appeal for the First Appellate District (*In re Sean W.* (2005) 127 Cal.App.4th 1177, 1183–1187 [26 Cal.Rptr.3d 248]) have construed the 2003 amendments of section 731 as authorizing the juvenile court to exercise its discretion in setting the maximum period of confinement in CYA (now DJF, see fn. 4, *ante*). Both courts undertook a comprehensive review of the legislative history of the 2003 amendments, and that history clearly indicates that discretion to impose the maximum term of confinement was intended to apply only to those minors who were committed to CYA. (See *In re Jacob J., supra*, 130 Cal.App.4th at pp. 436–437; *In re Sean W., supra*, 127 Cal.App.4th at pp. 1184–1185.)

■ Because section 731 was amended to confer discretion on juvenile courts to impose a maximum period of confinement to DJF, and section 726(c) was not similarly amended with respect to minors removed from parental custody but not committed to DJF, we infer the Legislature did not intend to change the way a maximum period of confinement is set in the latter class of cases.

In this case, the juvenile court did not err in selecting the upper term of five years for the robbery and adding one year for the arming enhancement for a total maximum term of confinement of six years. (See § 726(c).)

II, III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
.

---

*See footnote, *ante*, page 809.

## DISPOSITION

The case is remanded to the Sacramento County Juvenile Court with directions to enter into its minutes the finding that the minor's maximum period of confinement is six years. The court shall also reconsider whether the minor's mother should be relieved from making educational decisions for him and to make a record capable of appellate review. In all other respects, the judgment is affirmed.

Scotland, P. J., and Nicholson, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 17, 2009, S175472.