Filed 2/27/14  P. v. King CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B245918 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA078884) |
| v. | |
| JENNA ANNE KING, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathryn A. Solorzano, Judge.  Affirmed.

Robert Booher, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Susan Sullivan Pithey, Shawn McGahey Webb and Taylor Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

A jury convicted defendant, Jenna Anne King, of deadly weapon assault. (Pen. Code,[1] § 245, subd. (a)(1).) The jury further found that in committing the offense, defendant personally used a deadly weapon—a sport utility vehicle. (§ 12022, subd. (b)(1).) Imposition of sentence was suspended. Defendant was placed on three years' probation. We affirm the judgment.

# II. THE EVIDENCE

Victor Hugo Perez Reyes was the victim of the assault. Mr. Perez owned a food cart. He sold food in the neighborhood where he lived for four years. Mr. Perez and defendant were neighbors. There had been a series of negative interactions between defendant and Mr. Perez over the course of more than two years. Mr. Perez testified defendant would come looking for him and she would throw punches at him.

On September 18, 2011, as Mr. Perez left his home, defendant accosted him. Defendant accused Mr. Perez of being illegal. Defendant threatened to notify immigration authorities. Defendant grabbed at Mr. Perez's horn, which he used to announce his presence. Defendant hit Mr. Perez in the neck and near the elbow. When Mr. Perez ignored defendant and kept moving, she ran to her house.

Mr. Perez reached an intersection. Mr. Perez was waiting on a customer when defendant drove up in her black truck. Defendant stopped her black truck five to seven yards away. Defendant got out of her black truck and resumed her assault on Mr. Perez. Defendant got really close to Mr. Perez and yelled, "Mother fuck you, shit." Defendant told Mr. Perez he was illegal and he should go back to Mexico; he had no business being here. Defendant tried to take Mr. Perez's horn from him. Defendant yelled at Mr. Perez:

---

[1] Further statutory references are to the Penal Code unless otherwise noted.

"Don't you understand?  You can't been doing this because you are illegal."  Defendant shook Mr. Perez.  Silvestre Mendez Lopez pulled up in a truck.  Mr. Mendez-Lopez yelled at defendant:  "You leave him alone.  That person isn't doing anything to you.  He's working."  Defendant went to Mr. Mendez-Lopez's passenger side window and yelled at him.

Defendant got into her black sport utility vehicle.  Mr. Perez took two or three steps to leave.  Mr. Perez heard defendant revving her engine.  Defendant accelerated fast.  Defendant drove straight at Mr. Perez.  Defendant crashed into Mr. Perez so hard that his cart nearly flipped over.  Mr. Perez struggled to keep his cart upright.  It would have flipped over on its side if Mr. Perez, who was standing behind the cart, had not held on to it.  Mr. Perez was knocked off-balance but he did not fall.  Defendant put her truck in reverse and backed up about two yards.  Then defendant accelerated quickly toward Mr. Perez a second time.  Mr. Perez heard the engine rev again.  Defendant's truck hit Mr. Perez's cart a second time.  The second blow was not as hard as the first.  Mr. Perez suffered an injury to his lower back.  Some of the food in Mr. Perez's cart was damaged.  The cart itself was not damaged.  The jury viewed a video recording.  The recording showed events after defendant assaulted Mr Perez with her vehicle.  Mr. Perez testified the video recording showed only a portion of the altercation.

Mr. Mendez-Lopez witnessed the assault.  When Mr. Mendez-Lopez first arrived, defendant was yelling at Mr. Perez.  Defendant was telling Mr. Perez to leave.  Mr. Mendez-Lopez saw defendant punching Mr. Perez with a closed fist.  Mr. Mendez-Lopez told defendant to leave Mr. Perez alone.  Defendant walked about four steps to the driver's side of Mr. Mendez-Lopez's vehicle and screamed at him.  Defendant yelled: "Fuck.  Mother fucker.  Son of a bitch."  Mr. Mendez-Lopez thought defendant was going to hit him.  Mr. Mendez-Lopez testified, "She was being very aggressive."  Mr. Mendez-Lopez said defendant's tone of voice was "furious, horrible" and he called an emergency operator.

Mr. Mendez-Lopez testified that defendant got into her black truck and ran it into Mr. Perez's cart.  Defendant accelerated towards Mr. Perez from four or five meters

3

distance.  Mr. Mendez-Lopez saw the cart move.  Mr. Mendez-Lopez estimated defendant's speed at two to four miles per hour.  Defendant immediately put her black truck in reverse and drove toward Mr. Perez again.  Defendant accelerated towards Mr. Perez from four to five meters distance at two to four miles per hour.  After striking Mr. Perez's cart a second time, defendant backed her black truck away about 15 feet.  Defendant sat in her black truck talking to herself and laughing.  Mr. Mendez-Lopez could not hear what defendant was saying.  Defendant was still inside her black truck when police officers arrived.  Mr. Mendez-Lopez did not recall telling anyone defendant had accelerated at 15 miles per hour.

Officers Marco Olivarez  and Diego Aguilar arrived on the scene of the altercation between Mr. Perez and defendant.  Defendant was standing with two Latinos.  Defendant was "yelling erratically."  There was a cart in front of a black truck.  Mr. Perez told Officer Olivarez defendant had revved her engine and intentionally accelerated her black truck toward Mr. Perez.  Mr. Perez said defendant's black truck struck his cart, throwing him off-balance.  Mr. Perez said defendant backed up then accelerated toward him a second time, striking his cart again.  Officer Olivarez described Mr. Perez's condition: "He was frightened.  . . . [P]hysically] . . . he had redness to his left arm and . . . I believe his left neck and right side of his face."

Mr. Mendez-Lopez spoke with Officer Olivarez.  Mr. Mendez-Lopez saw defendant hitting Mr. Perez five times in the head while yelling obscenities and profanities.  Mr. Mendez-Lopez heard defendant tell Mr. Perez:  "You son of a bitch. You are an illegal alien, and you are illegal vending on my street."  Mr. Mendez-Lopez told Officer Olivarez defendant got into her black truck, revved the engine and intentionally accelerated toward Mr. Perez.  Mr. Mendez-Lopez described Mr. Perez as looking afraid.  Mr. Perez held onto his cart as a means of protection.  Mr. Mendez-Lopez said he saw defendant reverse her vehicle 15 feet and put it in drive again.  Defendant intentionally accelerated toward Mr. Perez a second time, again striking his cart.

4

## III.  DISCUSSION

### A.  Sufficiency Of The Evidence

Defendant was charged with deadly weapon assault in violation of section 245, subdivision (a)(1).  Section 240 defines an assault, "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (*People v. Chance* (2008) 44 Cal.4th 1164, 1167; *People v. Licas* (2007) 41 Cal.4th 362, 366.)  At the time defendant committed the present offense, former section 245, subdivision (a)(1), stated:  "Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished . . . ."  (Former § 245, subd. (a)(4), Stats. 2004, ch. 494, § 1; see *People v. Milward* (2011) 52 Cal.4th 580, 585; *People v. Aguilar* (1997) 16 Cal.4th 1023, 1028.)  Injury to the victim is not an element of the offense.  (*People v. Aguilar, supra,* 16 Cal.4th at pp. 1027-1028; *People v. Rocha* (1971) 3 Cal.3d 893, 900; *People v. Brown* (2012) 210 Cal.App.4th 1, 7.)  The jury found defendant guilty of "assault with a deadly weapon, to wit: a vehicle – SUV," a violation of section 245, subdivision (a)(1).

Defendant argues there was insufficient evidence she used her car in a manner capable of causing or likely to cause great bodily injury or death.  Defendant asserts: "The evidence established that [defendant] struck [Mr. Perez's] cart at a speed of two to four miles per hour, resulting in no damages beyond the crushing of some bags of pork skins that were hanging off of the cart and that [Mr. Perez] later sold.  [Citation to the record.]  Such evidence was insufficient to show that [defendant] used the car in a manner likely to cause death or great bodily injury . . . ."  It was for the jury to decide whether the sport utility vehicle was a deadly weapon.  (*People v. McCoy* (1944) 25 Cal.2d 177, 188; see *People v. Huggins* (2006) 38 Cal.4th 175, 249-250; *People v. Brown, supra,* 210 Cal.App.4th at p. 8.)  In doing so, the trier of fact considers the nature of the object, how it was used, and the circumstances surrounding its use.  (*People v.*

5

*Aguilar, supra,* 16 Cal.4th at p. 1029; *In re R.P.* (2009) 176 Cal.App.4th 562, 567; *People v. Golde* (2008) 163 Cal.App.4th 101, 116; *People v. Page* (2004) 123 Cal.App.4th 1466, 1470.)  The jury was properly instructed pursuant to CALCRIM No. 875:  "A *deadly or dangerous weapon* is any object, instrument, or weapon that is inherently deadly or dangerous or one that is used in such a way that it is capable of causing or likely to cause death or great bodily injury.  [¶]  In deciding whether an object is a deadly weapon, consider all the surrounding circumstances, including when and where the object was possessed, where the person who possessed the object was going and any other evidence that indicates whether the object would be used for a dangerous, rather than a harmless, purpose."  (See *People v. Aguilar, supra,* 16 Cal.4th at pp. 1028-1029; but see *People v. Brown, supra,* 210 Cal.App.4th at pp. 8-11.)  The jury was further instructed:  "*Great bodily injury* means significant or substantial physical injury.  It is an injury that is greater than minor or moderate harm."  As noted above, the jury found defendant guilty of deadly weapon assault.  We conclude substantial evidence supported the verdict.

We apply the following standard of review:  "'[W]e review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt.  [Citation.]  The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.  [Citation.]  ". . . We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.  [Citation.]"  [Citation.]  A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict.  [Citation.]'  (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 . . . .)"  (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

Prior to the present incident, defendant had repeatedly physically and verbally assaulted Mr. Perez over a more than two-year period.  She accused him of being an

illegal alien unlawfully selling food in her neighborhood.  She demanded that he stop doing so.  She used profanity in assailing Mr. Perez.  On September 18, 2011, defendant followed Mr. Perez to his usual vending location.  Defendant verbally and physically assaulted Mr. Perez.  Defendant then got into her large black truck.  Defendant revved her engine.  Defendant intentionally drove directly at Mr. Perez at a speed of two to four miles per hour.  Defendant hit Mr. Perez's cart as Mr. Perez held on to it.  Defendant rammed Mr. Perez's cart not just once but twice.  Defendant did not strike Mr. Perez himself only because his cart was in front of him.  Mr. Perez struggled to keep the cart upright.  Mr. Perez nearly fell over.  Mr. Perez suffered an injury to his lower back.  There was no evidence defendant drove her black truck at Mr. Perez for any reason other than to assault him.  Under all the surrounding circumstances,  the jurors could reasonably find defendant used her black truck in a manner capable of causing and likely to cause great bodily injury.  (See *People v. Russell, supra,* 129 Cal.App.4th at p. 782 & fn. 11; *People v. Wright* (2002) 100 Cal.App.4th 703, 705-706; *People v. Finney* (1980) 110 Cal.App.3d 705, 709-711, 716; *People v. Claborn* (1964) 224 Cal.App.2d 38, 42.)

## B.  Instructional Error

Some objects are *inherently* dangerous or deadly.  Others are dangerous or deadly because of the manner in which they are used.  Our Supreme Court has explained:  "As used in section 245, subdivision (a)(1), a 'deadly weapon' is 'any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury.'  (*In re Jose R.*[, *supra,*] 137 Cal.App.4th [at pp.] 275-276.)  Some few objects, such as dirks and blackjacks, have been held to be deadly weapons as a matter of law; the ordinary use for which they are designed establishes their character as such.  (*People v. Graham* (1969) 71 Cal.2d 303, 327, disapproved on other grounds in *People v. Ray* (1975) 14 Cal.3d 20, 32.)  Other objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury.  In determining whether an object not inherently deadly or dangerous is

7

used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue. (*In re Jose R., supra,* 137 Cal.App.3d at p. 276; see *People v. Nealis* (1991) 232 Cal.App.3d Supp. 1, 4, fn. 2 [citing California decisions holding various objects, not deadly per se, to be deadly weapons under the particular circumstances.].)" (*People v. Aguilar, supra,* 16 Cal.4th at pp. 1028-1029.)

Defendant asserts the jury was instructed in a manner that allowed it to find the black truck was an *inherentl*y deadly or dangerous weapon regardless of how it was used. As noted above, the jury was instructed, "A deadly or dangerous weapon is any object, instrument, or weapon that is [(1)] *inherently deadly* or [(2)] [*inherently*] dangerous or [(3)] one that is used in such a way that it is capable of causing or likely to cause death or great bodily injury." (Italics omitted in part and added in part.) Defendant notes that the jury was at one time split eleven to one on the question whether defendant's vehicle was a deadly weapon. The jury's note read: "Juror # __ believes the car in question is not a deadly weapon in this case as presented by the prosecution or evidence presented versus a majority (11) jurors believe it (the car) is a deadly weapon. We are unanimous that an assault took place but at a standstill on a verdict. Need direction on next step." In response, the trial court directed the jury to reread the instructions on assault with a deadly weapon (CALCRIM No. 875) and personal deadly weapon use (CALCRIM No. 3145). Defendant argues the [trial court] was obligated to clearly define the term so that the jury could *never* find that a car was an 'inherently' deadly or dangerous weapon."

Defendant did not object to CALJIC No. 875 in the trial court. She did not request the instruction be clarified when the jury sought direction. As a result, she forfeited the present argument. (Evid. Code, § 353; *People v. Lee* (2011) 51 Cal.4th 620, 638; *People v. Hillhouse* (2002) 27 Cal.4th 469, 503.)

Even if the issue is properly before us, we find any error was harmless under any standard. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Chun* (2009) 45 Cal.4th 1172, 1203; *People v. Watson* (1956) 46 Cal.2d 818, 836.) The focus of the trial was defendant's use of her black truck to assault Mr. Perez. The eyewitnesses were asked questions about the manner in which defendant drove her black truck. They were

8

asked how close defendant's black truck was to Mr. Perez each time defendant revved her engine and drove toward him. The eyewitnesses were asked about the speed at which defendant was traveling and the observable effect of the impact. Mr. Perez was asked how the impact affected him. Mr. Perez was asked whether his cart was damaged. The jury was instructed, "In deciding whether an object is a deadly weapon, consider all the surrounding circumstances, including when and where the object was possessed, where the person who possessed the object was going and any other evidence that indicates *whether the object would be used for a dangerous, rather than a harmless, purpose.*" (Italics added.) In her closing argument, Deputy District Attorney Karine Fong told the jury, "[D]efendant did an act with a deadly weapon . . . that by its nature would directly and probably result in the application of force to a person." Ms. Fong told the jury the act in question was defendant's revving her engine and accelerating her black truck directly at Mr. Perez. Ms. Fong urged the jury to consider all of the circumstances surrounding defendant's use of her sport utility vehicle. At no time was the jury asked to find the sport utility vehicle was an inherently deadly or inherently dangerous weapon without regard to the manner in which defendant drove it. The jury was initially unable to agree whether the sport utility vehicle was a deadly weapon. But the jurors then reheard evidence of the circumstances of the assault. The jurors reviewed videotape of a portion of the incident and reheard eyewitness and police officer testimony. The jury asked to rehear: "The sections/parts of testimony from Mr. Perez's and Mr. Mendez's, including the police officers' testimony regarding the time of day of the incident as well as the section that pertain to the impacts (how many contacts have taken place). How many times the car impacted according to the victim, witness and police officers." There is no risk the jury convicted defendant based solely on the nature of the object she used to assault Mr. Perez—the sport utility vehicle—without regard to the manner in which she used it. Any error in the instruction was harmless.

## C. Prosecutorial Misconduct

Defendant argues Ms. Fong committed prosecutorial misconduct. The context is as follows. In his closing argument to the jury, defendant's counsel, Daniel Ditlof, called the jury's attention to inconsistencies in Mr. Perez's testimony. In her final closing argument, Ms. Fong responded. Ms. Fong argued that despite the inconsistencies, Mr. Perez was a credible witness. Ms. Fong stated in part: "You can't just throw up your hands and say 'I don't know. I don't know. I don't know. You as jurors have to decide what you think happened on that day." Defendant asserts the foregoing comment improperly diluted the beyond a reasonable doubt standard of proof. Defendant argues, "[Ms. Fong's statement] suggest[ed] to the jurors that the prosecution's case had been proved if the jurors simply thought [defendant] had committed the crime."

Defendant did not object to Ms. Fong's argument at trial. Defendant did not request an admonition. Nor has defendant shown that an objection would have been futile. As a result, the present argument was forfeited. (*People v. Maciel* (2013) 57 Cal.4th 482, 541; *People v. Fuiava* (2012) 53 Cal.4th 622, 679-680.)

Even if the issue were properly before us, we would not find any misconduct. Our Supreme Court has held: "'"A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process." [Citations.] Under California law, a prosecutor who uses deceptive or reprehensible methods of persuasion commits misconduct even if such actions do not render the trial fundamentally unfair. [Citation.]'" (*People v. Williams* (2013) 58 Cal.4th 197, 274; accord, *People v. Edwards* (2013) 57 Cal.4th 658, 734.) Here, Ms. Fong was responding to Mr. Ditlof's challenge to Mr. Perez's credibility. Ms. Fong told the jury that notwithstanding Mr. Perez's inconsistencies, Mr. Perez was a credible witness. Ms. Fong reminded the jury it was their duty to determine the facts. This was proper argument. (See § 1127 ["The court shall inform the jury in all cases that the jurors are the exclusive judges of all questions of fact submitted to them and of the credibility of the witnesses"]; *People v. Anderson* (2007) 152 Cal.App.4th 919, 929

[instruction made it clear that "it is the jury who decides the facts"]; *People v. Butterfield* (1940) 40 Cal.App.2d 725, 728 ["it was the province of the jury to determine the weight and sufficiency of the evidence to support the verdict, and the credibility of witnesses"].)

Nor was there any prejudice to defendant. Reversal for prosecutorial misconduct is not required unless defendant can show she was prejudiced. (*People v. Arias* (1996) 13 Cal.4th 92, 161.) We apply the *Watson* standard of prejudice. (*People v. Arias, supra,* 13 Cal.4th at p. 161; *People v. Stansbury* (1993) 4 Cal.4th 1017, 1057, revd. on other grounds in *Stansbury v. California* (1994) 511 U.S. 318, 326-327.) Ms. Fong's argument was a proper reference to the jury's duty to determine the facts. The comment was made in the context of Mr. Perez's credibility. The jury was clearly instructed it had to find defendant guilty beyond a reasonable doubt. It is not reasonably probable a result more favorable to defendant would have been reached absent Ms. Fong's comments. And because there was no prosecutorial misconduct resulting in prejudice to defendant, Mr. Ditlof was not ineffective for failing to object. (*People v. Coffman* (2004) 34 Cal.4th 1, 120; *People v. Boyette* (2002) 29 Cal.4th 381, 433.)

## D. Restitution Fines

Defendant asserts the trial court erred in ordering her to pay a $240 restitution fine (§ 1202.4, subd. (b)) and a $240 parole revocation restitution fine (§ 1202.45). Defendant reasons: the trial court impliedly intended to impose the minimum fines; however, at the time defendant committed the present offense, on September 18, 2011, the minimum fines were $200, not $240; therefore, the $240 fines were unauthorized; and imposing the greater fines violated the ex post facto clauses of the state and federal Constitutions.

Defendant concedes she did not raise this argument in the trial court. However, as our Supreme Court has held, "A claim that a sentence is unauthorized may be raised for the first time on appeal, and is subject to correction whenever the error comes to the attention of the reviewing court." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1048, fn.

11

7; accord, *People v. Dotson* (1997) 16 Cal.4th 547, 554, fn. 6; *People v. Valenzuela* (2009) 172 Cal.App.4th 1246, 1248-1249.)

Defendant is correct that the law in effect when she committed the present offense must be applied to her. (*People v. Souza* (2012) 54 Cal.4th 90, 143; *People v. Hanson* (2000) 23 Cal.4th 355, 361-363.) When defendant committed the present assault, on September 18, 2011, former section 1202.4, subdivision (b)(1), authorized a restitution fine of not less than $200 or more than $10,000. (Stats. 2011, ch. 45, § 1, eff. July 1, 2011.) Section 1202.4, subdivision (b)(1) was amended effective January 1, 2012, to provide for a restitution fine of not less than $240 or more than $10,000. (Stats. 2011, ch. 358, § 1.) That amendment, which postdates defendant's crime, is inapplicable to defendant. (*People v. Souza, supra,* 54 Cal.4th at p. 143; *People v. Hanson, supra,* 23 Cal.4th at pp. 361-363.)

Nevertheless, the trial court had the discretion to set the section 1202.4, subdivision (b) restitution fine at any level from $200 to $10,000. (Former § 1202.4, subd. (b)(1), as amended by Stats. 2011, ch. 45, § 1, eff. July 1, 2011; *People v. Kramis* (2012) 209 Cal.App.4th 346, 350; *People v. Dickerson* (2004) 122 Cal.App.4th 1374, 1379.) The $240 restitution fine imposed in this case was within that range. We presume the trial court applied the law in effect at the time defendant committed the present offense and chose, in its discretion, to impose a $240 fine. (Evid. Code, § 664; *In re Jacob J.* (2005) 130 Cal.App.4th 429, 437-438, disapproved on another point in *In re Julian R.* (2009) 47 Cal.4th 487, 499; *People v. Mosley* (1997) 53 Cal.App.4th 489, 496.) Under section 1202.45, the parole revocation restitution fine is in the same amount as the section 1202.4, subdivision (b) restitution fine. (*People v. Soria* (2010) 48 Cal.4th 58, 62; *People v. Smith* (2001) 24 Cal.4th 849, 851.) There was no error.

## IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P.J.

We concur:


KRIEGLER, J.


MINK, J.*

---

* Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.