Opinion
BLEASE, Acting P. J.
This case involves the meaning of section 23394-7 of the Business and Professions Code, which regulates the sale of alcoholic beverages at any customer-operated checkout stands.[1] It provides: “No privileges under an off-sale license shall be exercised by the licensee at any customer-operated checkout stand located on the licensee’s physical premises.” (§ 23394.7, as added by Stats. 2011, ch. 726, § 2.) The principal question tendered is whether “customer-operated checkout stand” refers to the stand itself or to the function performed at the stand, and, accordingly, whether the members of petitioner California Grocers Association (Grocers) may sell alcoholic beverages at such a stand.
*1068 Grocers invokes our original jurisdiction in two writs of mandate to review the validity of an advisory issued by respondent Department of Alcoholic Beverage Control (Department). (§ 23090.5.) The advisory interprets section 23394.7 as providing that “no alcoholic beverages may be sold through any checkout stand that is enabled to allow operation by the customer at the time the customer’s check-out transaction commences or at any point during the check-out process.”
The writ in case No. C070007 challenges the Department’s compliance with the Administrative Procedure Act (Gov. Code, §11340 et seq.; hereafter APA). The APA sets forth procedures for the adoption of an administrative regulation and provides that, a failure to do so voids the agency action. (Gov. Code, § 11340.5 subd. (a).) A regulation is inter alia a general rule that interprets the law enforced by the agency. (Gov. Code, § 11342.600; Tidewater Marine Western, Inc. v. Bradshaw (1996) 14 Cal.4th 557, 571 [59 Cal.Rptr.2d 186, 927 P.2d 296] (Tidewater).) An interpretation is subject to the APA unless it is “essentially rote, ministerial, or . . . repetitive of . . . the [law’s] plain language.” (Morning Star Co. v. State Bd. of Equalization (2006) 38 Cal.4th 324, 336-337 [42 Cal.Rptr.3d 47, 132 P.3d 249] (Morning Star).) A rule that violates the APA is void regardless that its interpretation is a correct reading of the law. (Morning Star, supra, at pp. 336-337.)
We shall conclude that the advisory is a regulation subject to the APA because it is directed to the general class of retail off-sale liquor licensees that employ checkout stands and because its interpretation of section 23394.7 is not “essentially rote, ministerial, or . . . repetitive . .. .” (Morning Star, supra, 38 Cal.4th at p. 337.) This conclusion requires that we void the advisory.
However, this does not end our inquiry. “[Although the court must void an interpretive regulation that does not comply with the APA procedures, it may resolve the ambiguity that gave rise to the agency interpretation if it is not required to defer to the agency construction.” (Capen v. Shewry (2007) 155 Cal.App.4th 378, 391 [65 Cal.Rptr.3d 890].) As we explain below, we need not defer to the Department’s interpretation because the interpretation of section 23394.7 is well within the court’s competence.
The writ in case No. C070375 challenges the validity of the advisory as a violation of section 23394.7. The advisory describes a “customer-operated checkout stand” as a physical device that may be operated in whole or in part by a customer. It expresses the interpretive view of the Department that section 23394.7 prohibits the sale of alcoholic beverages at such a checkout stand even if the sale is approved by an employee of the licensee in a face-to-face transaction.
*1069 Grocers argues that a checkout stand that is programmed to lock the stand’s mechanism when an alcoholic beverage is scanned, and that can be unlocked only by an employee of the licensee after a face-to-face approval of the sale, complies with section 23394.7. Resolution of the claim turns on whether section 23394.7 refers to the checkout stand itself or the function performed at the stand. We find the answer in the grammar of the section.
Section 23394.7 prohibits the sale of alcoholic beverages “at any customer-operated checkout stand . . . .” (Italics added.) The “at” refers to the checkout stand itself, and “customer-operated” modifies the term “checkout stand.” The phrase “customer-operated checkout stand” thus describes the kind of checkout stand “at” which the sale of alcoholic beverages is prohibited. By contrast, section 23394.7 does not use qualifying words that specify the function performed by the checkout stand, such as “when” or “by whom” the checkout stand is operated or “unless” a lockout system is employed. Grocers argues that under section 23394.7 the exercise of privileges under an off-sale license occurs only at the point of sale of the alcohol and that occurs only when an employee authorizes the sale to proceed at a customer-operated checkout stand. Accordingly, at the point of sale the stand is not functioning as a customer-operated checkout stand. The argument is not responsive to the language of section 23394.7.[2] It makes no difference at what point the sale occurs in the checkout procedure since section 23394.7 bars any sale “at” a customer-operated checkout stand. This view is amply supported by the legislative history of the section, as we explain below.
We shall grant the writ in case No. C070007 because the advisory is more than a simple paraphrase of section 23394.7. We shall deny the writ in case No. C070375 because we find that the advisory correctly interprets section 23394.7. A sale “at” a “customer-operated checkout stand” unambiguously refers to a kiosk, a device that may be physically operated in whole or part by a customer.
Procedure
Grocers filed two petitions for a writ of mandate[3] and an allied complaint for declaratory relief invoking our original jurisdiction under section *1070 23090.5.[4] (Schenley Affiliated Brands Corp. v. Kirby (1971) 21 Cal.App.3d 177 [98 Cal.Rptr. 609].) We shall consider only the petitions for extraordinary relief.[5]
The writs seek different forms of relief. In case No. C070007 Grocers seeks the invalidation of the advisory on the ground its adoption did not comply with the procedural provisions of the APA. In case No. C070375 Grocers seeks the invalidation of the advisory on the ground it is not authorized by section 23394.7.
In case No. C070007 Grocers filed a petition for writ of mandate and a request for a stay of the advisory, together with supporting exhibits and a request for judicial notice and supporting briefs. We issued a stay of the effect of the advisory, issued an order granting an alternative writ, and granted petitioner’s request for judicial notice. The Department filed a return to the writ, exhibits in support of respondents’ return, a motion in support of judicial notice, and supporting briefs. We granted the Department’s motion in support of judicial notice, with accompanying exhibits, consisting of the legislative history of section 23394.7 and declarations, except for exhibits Nos. 4, 7, and 12 (a bill analysis from Grocers; a letter analysis from the author of the legislation, Assemblymember Fiona Ma, to the Department; and a committee staff memorandum to Assemblymember Ma). Grocers filed opposing briefs. Department also submitted exhibits in support of respondents’ return to which Grocers filed objections to evidence regarding exhibits Nos. 14 through 16, consisting of the same exhibits denied admission pursuant to respondents’ motion in support of judicial notice.[6]
In case No. C070375 Grocers filed a second petition for writ of mandate and complaint for declaratory relief, invoking our original jurisdiction, claiming that the Department was continuing to enforce the advisory; a request for a stay; supporting points and authorities; a request for judicial notice; and a motion to consolidate the case with case No. C070007. We issued an *1071 alternative writ, granted the request for judicial notice, issued a stay of the enforcement of the statute on February 21, 2012, and consolidated the cases for all further appellate proceedings except for the retention of their case numbers.
Legislative History of Section 23394.7
Prior to the enactment of section 23394.7 there was no express statutory prohibition of the sale of alcoholic beverages at a customer-operated checkout stand. The Alcoholic Beverage Control Act (§ 23000 et seq.) prohibited the sale of alcohol to minors, and a violation subjected a licensee to the suspension or revocation of a license to sell alcoholic beverages or punishment as a misdemeanor.
In 2011 section 23394.7 was added to the Business and Professions Code by Assembly Bill No. 183 (2011-2012 Reg. Sess.). As introduced in the Assembly on January 25, 2011, the bill provided in relevant part as follows:
“Sec. 2. Section 23394.7 is added to the Business and Professions Code, to read:
“. . . (a) No privileges under an off-sale license shall be exercised by the licensee at any checkstand, where the customer is able to scan and purchase alcoholic beverages using a point-of-sale system with limited or no assistance from an employee of the licensee.
“(b) For purposes of this section, ‘point-of-sale’ system means any computer or electronic system used by a retail establishment such as, but not limited to, Universal Product Code scanners, price lookup codes, or an electronic price lookup system as a means for determining the price of the item being purchased by a consumer.”
The section was preceded by legislative findings, as follows:
“SECTION 1. The Legislature finds and declares that allowing customers to purchase alcoholic beverages through self-service checkouts:
“(a) Facilitates the purchase of alcoholic beverages by minors.
“(b) Permits customers who are in an advanced state of intoxication to purchase additional alcoholic beverages, in violation of state law.
“(c) Allows for greater theft of alcoholic beverages, thereby depriving the state of tax revenues.”
*1072 Assembly Bill No. 183 (2011-2012 Reg. Sess.) was amended in the Assembly on May 19, 2011, and in the Senate on June 22, 2011, to read as it now appears in the Business and Professions Code:
“No privileges under an off-sale license shall be exercised by the licensee at any customer-operated checkout stand located on the licensee’s physical premises.” (§ 23394.7.)
The amendments retained the same findings as contained in the bill as introduced.
The exhibits admitted as evidence set forth the bill analyses of the measure at each stage of the measure’s passage through the Legislature.
The bill analysis of Assembly Bill No. 183 (2011-2012 Reg. Sess.) provided to the Assembly Committee on Governmental Organization at its hearing on April 13, 2011, sets forth a summary of the measure, the existing law, and comments. The comments contain a statement by the bill’s author, in relevant part, as follows. “[T]his bill takes a precautionary step and precludes the possibility of underage drinking abuses occurring due to the usage of a self-service checkout kiosk, the passive supervision associated with these stations makes them vulnerable to manipulation. By forcing alcohol purchases to be made through a face-to-face transaction from beginning to end, the state of California can ensure that the necessary age verification steps are being taken to keep alcohol out of the hands of minors.” (Assem. Com. on Governmental Organization, Rep. on Assem. Bill No. 183 (2011-2012 Reg. Sess.) as introduced Jan. 25, 2011, p. 2, italics added.)
The identical author’s comment was attached to the bill analyses provided to the Assembly Committee on Appropriations on May 4 and May 11, 2011, the Assembly third reading, and the Senate Committee on Governmental Organization at its hearing on June 14, 2011, that occurred after the Assembly’s amendment set forth above was adopted on May 19, 2011. The arguments in opposition to the measure at the latter hearing by the Senate Committee on Governmental Organization, that followed the May 19, 2011, amendment, state, in relevant part: “Opponents disagree with the findings of the measure and argue that self-service checkout stations have a lock-out or ‘freeze’ mechanism to preclude any customer from purchasing alcoholic beverages without clerk intervention to verify age (ID) and finalize the purchase. [|] Opponents state that ‘assisted checkout stations are overseen by clerks who must abide by California state law governing the sale of alcoholic beverages. The clerks must either ask for identification from individuals seeking to purchase alcoholic beverages or make a determination that the customer is above the age of 21 and “override” the system by keying in their *1073 clerk or other code in order to complete the transaction.’ ” (Sen. Com. on Governmental Organization, Rep. on Assem. Bill No. 183 (2011-2012 Reg. Sess.) as amended May 19, 2011, p. 3.) The opponents’ arguments were rejected.
Finally, the bill analysis of the Senate amendments from the Office of Senate Floor Analyses provided to the Senate states the purpose of the legislation. “Current law requires retailers to conduct all sales of cigarettes, spray paints, and some over the counter drugs through face to face transactions.[7] This bill will additionally require customers to purchase alcoholic beverages at a check stand other than a self-service kiosk. Retailers claim that self-service checkouts already contain a ‘lock-out’ mechanism which prohibits a customer from purchasing alcohol until a clerk intervenes and verifies that the customer is over age 21 through the identification of the customer.” (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 183 (2011-2012 Reg. Sess.) as amended June 22, 2011, pp. 2-3, italics added.)
DISCUSSION
This case tenders two issues of interpretation arising from the two writs of mandate. The first concerns whether the advisory’s interpretation meets the test of a regulation. The second concerns whether the advisory’s interpretation of section 23394.7 is correct. We treat these matters separately.
A. The Administrative Procedure Act
In case No. C070007 Grocers argues that the advisory interpretation is a regulation that is void for lack of compliance with the APA.
The APA requires that an agency comply with the notice and comment procedures for formalizing a regulation and the failure to do so voids the regulation. (Gov. Code, § 11340.5, subd. (a); Tidewater, supra, 14 Cal.4th 557, 568.) “A regulation subject to the APA . . . has two principal identifying characteristics. [Citation.] First, the agency must intend its rule to apply generally .... Second, the rule must ‘implement, interpret, or make specific the law enforced ... by [the agency] . . . .’ ” (Tidewater, supra, 14 Cal.4th at p. 571.) The first is a test of the generality of the agency’s promulgation; the second is a test of the conformity of the interpretation with the statute interpreted.
As to the first test, a regulation subject to the APA has been construed to apply “to all generally applicable administrative interpretations of a statute,” *1074 presumptively including the advisory, whether or not the interpretation is in the form of a regulation and whether or not it is a correct reading of the statute. (Morning Star, supra, 38 Cal.4th atp. 335; see Capen v. Shewry, supra, 155 Cal.App.4th at p. 383 (Capen).)
As to the second test, an agency interpretation of a statute is not subject to the APA if it is “the only legally tenable interpretation” of the statute. (Gov. Code, § 11340.9, subd. (f).) That phrase has been construed to apply only if the interpretation is “patently compelled by . . . the statute’s plain language.” (Morning Star, supra, 38 Cal.4th at p. 337.) An interpretation is “patently compelled” when it “ ‘can reasonably be read only one way’ [citation], such that the agency’s actions or decisions in applying the law are essentially rote, ministerial, or . . . repetitive of . . . the statute’s plain language.” (Id. at pp. 336-337.) By contrast, “interpretations that arise in the course of case-specific adjudication are not regulations . . . .” (Tidewater, supra, 14 Cal.4th at p. 571.)
The advisory is palpably a regulation. It meets the two criteria that define a regulation. It is a generally applied policy of the agency. It is an interpretation of section 23394.7 that is not “rote, ministerial, or . . . repetitive of . . . the [law’s] plain language” because it describes a circumstance to which the statute applies. For this reason the adoption of the advisory without the notice and opportunity to comment required by the APA is invalid.
B. Section 23394.7
As noted, section 23394.7 provides: “No privileges under an off-sale license shall be exercised by the licensee at any customer-operated checkout stand located on the licensee’s physical premises.” The question is whether “customer-operated checkout stand” refers to the stand itself or to the function performed at the stand, and, accordingly, whether the members of petitioner Grocers may sell alcoholic beverages at such a stand.
The writ in case No. C070375 challenges the validity of the advisory issued by the Department as in violation of section 23394.7. The section provides that “[n]o privileges under an off-sale license shall be exercised by the licensee at any customer-operated checkout stand located on the licensee’s physical premises.” (§ 23394.7.) The advisory interprets section 23394.7 as providing that “no alcoholic beverages may be sold through any checkout stand that is enabled to allow operation by the customer at the time the customer’s check-out transaction commences or at any point during the check-out process.” The advisory thus describes a “customer-operated checkout stand” as a physical device that may be operated in whole or in part by a customer. It expresses the interpretive view of the Department that section *1075 23394.7 prohibits the sale of alcoholic beverages at such a checkout stand even if the sale must be approved by an employee of the licensee in a face-to-face transaction.
Grocers argues that a checkout stand that is programmed to lock the stand’s mechanism when an alcoholic beverage is scanned, and that can be unlocked only by an employee of the licensee after a face-to-face approval of the sale, complies with section 23394.7. The Department replies: “Under the Legislature’s approach, sellers must directly monitor both the handling and purchase of alcoholic beverages as the product proceeds through checkout. Because direct human monitoring is involved at every stage of the sales transaction—avoiding the serious risk of customers evading so-called automated ‘failsafe’ devices and the mechanical failure of those devices—minors and intoxicated persons are prevented from obtaining alcoholic beverages.” Resolution of the claims turns on whether section 23394.7 refers to the stand itself or the function performed at the stand. We find the answer in the grammar of the section.
Section 23394.7 prohibits the sale of alcoholic beverages “at any customer-operated checkout stand . . . .” (Italics added.) The “at” refers to the checkout stand itself, and “customer-operated” modifies the term “checkout stand.” The phrase “customer-operated checkout stand” thus describes the kind of checkout stand “at” which the salé of alcoholic beverages is prohibited. By contrast, section 23394.7 does not use qualifying words that specify the function performed at the checkout stand, such as “when” it is being operated by a customer or “unless” a lockout system is employed.
This reading is supported by legislative findings that justified both the amended and unamended forms of section 23394.7.[8] The findings say that the purpose of the legislation is to preclude theft and that a customer-operated checkout stand “[ajllows for greater theft of alcoholic beverages.” This is a circumstance that could occur only if an alcoholic beverage container is concealed and not scanned by the purchaser.[9] However, a lockout system works only when an alcoholic beverage container is scanned at the checkout stand. If the beverage is concealed it perforce is not scanned.
*1076 This reading is also supported by the legislative history of the measure. The Legislature was informed at each stage of its passage, both before and after the amendments in the Assembly and the Senate that produced the current language, in relevant part as follows: “[T]his bill takes a precautionary step and precludes the possibility of underage drinking abuses occurring due to the usage of a self-service checkout kiosk .... By forcing alcohol purchases to be made through a face-to-face transaction from beginning to end, the state of California can ensure that the necessary age verification steps are being taken to keep alcohol out of the hands of minors.” (Assem. Com. on Governmental Organization, Rep. on Assem. Bill No. 183 (2011-2012 Reg. Sess.) as introduced Jan. 25, 2011, p. 2, italics added; see Sen. Com. on Governmental Organization, Rep. on Assem. Bill No. 183 (2011-2012 Reg. Sess.) as amended May 19, 2011, p. 2.) This history is contrary to a functional test.
Grocers argues that the amendment to section 23394.7 that removed language applying the section to a “point-of-sale” system, had the result of exempting such a system from its prohibitions. We disagree. The argument is not supported by the grammar of the section nor by the legislative findings and explanation given by the Legislature during the section’s passage, which remained unchanged.
Thus, notwithstanding that we void the advisory for violation of the APA, we determine that it correctly interprets section 23394.7. Although the advisory is void, our construction of the section is binding on the Department. (Tidewater, supra, 14 Cal.4th at pp. 577-579; Capen, supra, 155 Cal.App.4th at pp. 390-393.)
DISPOSITION
We grant the writ in case No. C070007 voiding the advisory because the interpretation is more than a simple paraphrase of section 23394.7. We deny the writ in case No. C070375 because the advisory is a correct interpretation of section 23394.7. The stay of enforcement of section 23394.7, issued on February 21, 2012, having served its purpose, is lifted. The parties shall bear their own costs. (Cal. Rules of Court, rule 8.493(a)(1)(B).)

 A reference to a section is to the Business and Professions Code unless otherwise specified.

 Petitioner’s motion in support of request for judicial notice filed in cases Nos. C070007 and C070375 on June 5, 2012, are denied.

 Code of Civil Procedure section 1085.

 Section 23090.5 provides in relevant part: “No court. .. except the Supreme Court and the courts of appeal . . . shall have jurisdiction to review . . . any order, rule, or decision of the department. . . but a writ of mandate shall lie from the Supreme Court or the courts of appeal in any proper case.”

 The Court of Appeal does not have original jurisdiction over a complaint for declaratory relief. The court “ha[s] original jurisdiction [only] in habeas corpus proceedings . . . [and] in proceedings for extraordinary relief in the nature of mandamus, certiorari and prohibition.” (Cal. Const., art. VI, § 10.) Section 23090.5 specifies a “writ of mandate” as the proper form of appellate review of an “order, rule, or decision” of the Department. In section 23090.5 “the Legislature intended ... to provide for judicial review . . .” of actions of the Department “when acting in its administrative rather than in its limited judicial capacity.” (Samson Market Co. v. Kirby (1968) 261 Cal.App.2d 577, 581 [68 Cal.Rptr. 130].)

 The objection is sustained and the motion granted.

 Section 22960 prohibits the sale of cigarette or tobacco products “from a vending machine . . . .” (Id., subd. (a).)

 “The Legislature finds and declares that allowing customers to purchase alcoholic beverages through self-service checkouts: [IQ (a) Facilitates the. purchase of alcoholic beverages by minors, [f] (b) Permits customers who are in an advanced state of intoxication to purchase additional alcoholic beverages, in violation of state law. [f] (c) Allows for greater theft of alcoholic beverages, thereby depriving the state of tax revenues.” (Assem. Bill No. 183 (2011-2012 Reg. Sess.) § 1, as introduced Jan. 25, 2011; id., as amended May 19, 2011, § 1; id., as amended June 22, 2011, § 1.)

 Although this could be said of all checkout stands, the purpose set forth in the finding is nonetheless consistent only with customer-operated checkout stands.