[No. C073744. Third Dist. Sept. 11, 2015.]

In re ALBERT W., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ALBERT W., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I, IIB., and IIC. of the Discussion.

## Counsel

Carol A. Koenig, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Michael Dolida, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**DUARTE, J.**—Delinquent minor Albert W. timely appeals from an order committing him to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities (DJF).[1] He contends (1) insufficient evidence supports

---

[1] "Effective July 1, 2005, the correctional agency formerly known as the California Youth Authority (CYA) became known as [DJF]. DJF is part of the Division of Juvenile Justice, which in turn is part of the Department of Corrections and Rehabilitation. [Citations.] Statutes that formerly referred to CYA . . . now refer to DJF." (*In re Jose T.* (2010) 191 Cal.App.4th

the finding that he was competent; (2) the most recent sustained petition filed against him was a Louisiana petition that precludes a DJF commitment; (3) he was misadvised about the possible consequences of his admission; and (4) the juvenile court abused its discretion by committing him to the DJF.

As we shall explain in the published portion of this opinion, part IIA. of the Discussion, the term "any petition" as used in Welfare and Institutions Code section 733,[2] which limits commitments to DJF based on the nature of the "most recent offense alleged in any petition," does not encompass sister-state delinquency petitions as the minor claims. In the remainder of the opinion, we reject the minor's other claims of reversible error. We shall affirm.

## BACKGROUND

The minor was made a ward at age 12 based on his May 1, 2008, admission to second degree robbery, after which a petition alleging residential burglary and knowing receipt of stolen property was dismissed with the understanding those charges could be used at disposition. The minor was sent to live with his father in Louisiana under the supervision of the probation department.

Two sustained Louisiana petitions followed, alleging simple burglary, simple criminal damage, and disturbing the peace. On May 23, 2010, Louisiana authorities closed the minor's case and returned him to his mother in California.

A notice filed under section 777 on August 18, 2010, alleged several violations of probation (VOPs). (See *In re Greg F.* (2012) 55 Cal.4th 393, 400, 403–405 [146 Cal.Rptr.3d 272, 283 P.3d 1160] [describing VOP procedure].) A second VOP was filed the following week, alleging the minor had committed two residential burglaries.

On January 5, 2011, proceedings were suspended, and after three evaluations—including one by Dr. Kevin Dugan—the parties submitted the matter on September 16, 2011, and the minor was found incompetent and referred to determine if he was intellectually disabled and to design an appropriate placement plan.

On January 27, 2012, the probation department sought a warrant because the minor had absconded after threatening his mother with a sawed-off

1142, 1145, fn. 1 [120 Cal.Rptr.3d 562]; see *In re J.L.* (2008) 168 Cal.App.4th 43, 47, fn. 1 [85 Cal.Rptr.3d 35] [DJJ (Division of Juvenile Justice) and DJF interchangeable].)

[2] Further undesignated statutory references are to the Welfare and Institutions Code.

shotgun the day before. On February 7, 2012, the minor was detained. He was later released to his mother.

On May 11, 2012, another VOP was filed, alleging the minor threatened a school official, among other acts. Later that month, a notice was filed alleging a violation of electronic monitoring restrictions. Another notice and a VOP replicating the charge of threatening a school official were filed on June 1, 2012. A superseding VOP was filed on June 8, 2012, adding that the minor possessed a loaded firearm at school, and related allegations. Later, a superseding June 26, 2012 VOP was filed.

On July 11, 2012, counsel again expressed a doubt about the minor's competence. This time, Dr. Dugan's report *rejected* his 2011 diagnosis of "mild mental retardation" and incompetency and concluded the minor had been malingering. After a contested hearing held September 25 to 28, 2012, the juvenile court (Twiss, J.) found the minor to be competent.

Meanwhile, in July 2012, the probation department filed a report stating the minor was classified as a gang member and had had six formal incident reports while in custody; further he was sophisticated and dangerous and had failed on home supervision and electronic monitoring in the past.

A second superseding VOP was filed on October 16, 2012, but the minor was not present due to a behavioral issue triggered when his counsel suggested continuing the case for two weeks, and the arraignment was postponed.

On November 15, 2012, the minor admitted he committed a residential burglary in 2010, and the juvenile court dismissed the remaining VOP charges with the stipulation that they could be used for dispositional purposes. These included another 2010 residential burglary, criminal threats with personal use of a firearm in January 2012 (Pen. Code, §§ 422, 12022.5, subd. (a)), attempting to deter a peace officer by threats in May 2012 (*id.*, § 71), attempting to resist another officer by threats later in May (*id.*, § 69), and possessing a loaded handgun at school in June 2012 (*id.*, § 25850, subd. (a)).

On November 29, 2012, yet another VOP was filed, alleging the minor had assaulted another resident of his detention facility.

At a hearing on December 6, 2012, the juvenile court (Oros, J.) ordered a 90-day diagnostic evaluation (see § 704), after two unreported conferences

with counsel, and after the minor's counsel argued for a level B referral.[3] The November 29 VOP was dismissed with the understanding that it could be used at disposition. The court found the minor eligible for DJF placement. The minor opposed a DJF commitment, due partly to the Louisiana cases, arguing that his most recent offense (committed in Louisiana) was "an admission to a non-707(B) offense."

At the dispositional hearing on March 28, 2013, the juvenile court (Boulware Eurie, J.) committed the minor to DJF for up to five years. The minor timely appealed.

## DISCUSSION

### I[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II

### *DJF Commitment*

For several reasons, the minor contends his DJF commitment was improper. We address his claims separately, and reject each of them.

A. *Whether the Louisiana Petition Can Contain the Most Recent Offense*

▮ Section 733, stated in the negative, provides in part that a ward shall not be committed to DJF if, inter alia, he or she "(c) . . . is adjudged a ward of the court pursuant to Section 602, and the most recent offense alleged in any petition and admitted or found to be true by the court is not described in subdivision (b) of Section 707." His most recent offense *alleged in a California petition* was robbery; there is no dispute that this was a qualifying (§ 707, subd. (b)) offense.

▮ The parties also agree the minor was the subject of a more recent Louisiana petition alleging acts that would *not* fall within section 707, subdivision (b) if committed in California. The minor contends the most recent Louisiana charge is "the most recent offense alleged in any petition" within the meaning of section 733, and therefore he may not be committed to DJF. We are not persuaded.

---

[3] The evaluation was not carried out, based on the lack of a contract. (See § 704, subd. (c).)

[*] See footnote, *ante*, page 411.

The key language of section 733, subdivision (c) is "the most recent offense alleged in *any petition* and admitted or found to be true by *the court.*" (Italics added.) The parties dispute the meaning of "any petition" and "the court" as those terms are used in this section.

■ "[A]ny" is broad and generally "means *all* or *every.*" (*California Grocers Assn. v. Department of Alcoholic Beverage Control* (2013) 219 Cal.App.4th 1065, 1078 [162 Cal.Rptr.3d 396] (conc. opn. of Duarte, J.).) The section's use of "any" lends some support to the minor's claim that "any petition" means "any delinquency petition," that is, any petition wherever filed.

■ A "petition" under section 733 means a section 602 petition, not a VOP notice. (*In re D.B.* (2014) 58 Cal.4th 941, 944 [169 Cal.Rptr.3d 672, 320 P.3d 1136]; *In re Greg F., supra,* 55 Cal.4th at pp. 404–405; *In re J.L., supra,* 168 Cal.App.4th at pp. 58–60.) However, as we will explain, section 602 refers to petitions alleging state or federal crimes committed in California; there is no basis for California to exercise jurisdiction over crimes committed in sister-states. When we consider the delinquency scheme as a whole, as we must, we conclude the minor's proffered candidate of meaning is not a *plausible* meaning, so as to raise a true ambiguity. (See *Alameda County Flood Control & Water Conservation Dist. v. Department of Water Resources* (2013) 213 Cal.App.4th 1163, 1179–1180 [152 Cal.Rptr.3d 845].)

■ "[T]he goal of statutory construction is ascertainment of legislative intent so that the purpose of the law may be effectuated, and that we should construe a statute in the context of the entire statutory system of which it is a part, in order to achieve harmony among the parts." (*People v. Shirokow* (1980) 26 Cal.3d 301, 306–307 [162 Cal.Rptr. 30, 605 P.2d 859]; see *In re M.M.* (2012) 54 Cal.4th 530, 536 [142 Cal.Rptr.3d 869, 278 P.3d 1221].) Therefore, we review other sections of the delinquency law that may bear on the meaning of the words "petition" and "court" as used in section 733.

Section 245 provides in part: "Each superior court shall exercise the jurisdiction conferred by this chapter, and while sitting in the exercise of such jurisdiction, shall be known and referred to as the juvenile court." The "court" referred to is a *California* court. (See Cal. Const., art. VI, § 4.) Section 650 provides in part: "Juvenile court proceedings to declare a minor a ward of the court *pursuant to Section 602* are commenced by the filing of a petition by the prosecuting attorney." (§ 650, subd. (c), italics added.) The reference to section 602 negates the idea that a proceeding based on Louisiana law would be deemed "commenced by the filing of a petition" under this statute. (See Cal. Rules of Court, rule 5.502(29) [" 'petitioner,' in section 601 and 602 proceedings, means the probation officer or prosecuting attorney"].)

In turn, section 602 provides in part: "Except as provided in subdivision (b) [listing particularly serious crimes], any person who is under 18 years of age when he or she violates any law of this state or of the United States or any ordinance of any city or county of this state defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction *of the juvenile court,* which may adjudge such person to be *a ward of the court.*" (§ 602, subd. (a), italics added.) Plainly, the court referenced is the juvenile court, which is a department of each *California* county's superior court. (See § 245.)

Section 656 specifies the contents of a wardship petition commencing delinquency proceedings in a California juvenile court. Section 656.1 requires that "Any petition alleging that the minor *is a person described by Section 602* shall specify as to each count whether the crime charged is a felony or a misdemeanor." (Italics added.) Again, the referenced statutes refer to California proceedings under section 602, not *any* proceeding.

As stated by our Supreme Court, albeit in another context: "No section 602 case begins until the prosecutor files a petition under that statute *on the People's behalf.*" (*In re Eddie M.* (2003) 31 Cal.4th 480, 487 [3 Cal.Rptr.3d 119, 73 P.3d 1115], italics added.) "In a juvenile court hearing which is based upon a petition that alleges that the minor upon whose behalf the petition is being brought is a person within the description of Section 602, the prosecuting attorney shall appear *on behalf of the people of the State of California.*" (§ 681, subd. (a), italics added.) These passages again plainly reference the *California* cases.

Ultimately, after an admission or contested hearing, "If the court has found that the minor is a person described by Section 601 or 602, it may order and adjudge the minor to be a ward of the court." (§ 725, subd. (b).) This usage of "the court," too, plainly references a *California* juvenile court. "California juvenile court law . . . does not apply to any person who violates a law of another state defined as a crime and is at the time of the violation under 18 years of age, or who subsequently flees into the State of California." (Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2015) Jurisdiction, § 3.20[6], p. 3-37.)

Accordingly, we do not believe the minor's candidate of meaning of section 733, subdivision (c) plausibly accounts for the statutory language, when the statutory scheme is viewed as a whole, rather than in isolation. But even assuming without finding that there is any ambiguity to resolve, we would apply the venerable rule that statutes do not apply extraterritorially absent an explicit legislative indication. "However far the Legislature's power may theoretically extend, we presume the Legislature did not intend a statute

to be ' "operative, with respect to occurrences outside the state, . . . unless such intention is clearly expressed or reasonably to be inferred 'from the language of the act or from its purpose, subject matter or history.' " ' " (*Sullivan v. Oracle Corp.* (2011) 51 Cal.4th 1191, 1207 [127 Cal.Rptr.3d 185, 254 P.3d 237].)

The minor emphasizes the *purposes* of section 733 were to reduce the number of delinquents housed in state facilities to end litigation, save money, and achieve better results for youthful offenders, by limiting DJF commitments to the more serious delinquents. (See *In re Greg F., supra*, 55 Cal.4th at pp. 409–410; *In re N.D.* (2008) 167 Cal.App.4th 885, 891–892 [84 Cal.Rptr.3d 517].) But while acting to achieve those purposes, the Legislature, presumably aware of the statutes just described, and the presumption against extraterritoriality of state statutes (see *Estate of McDill* (1975) 14 Cal.3d 831, 837–839 [122 Cal.Rptr. 754, 537 P.2d 874]; *In re Eddie L.* (2009) 175 Cal.App.4th 809, 815 [96 Cal.Rptr.3d 437]), could have written section 733 so as to encompass foreign delinquency petitions. It did not do so.

Accordingly, we reject the minor's claim that the Louisiana petitions have any relevance to his eligibility for a DJF commitment under section 733.

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The dispositional order is affirmed.

Robie, Acting P. J., and Mauro, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 18, 2015, S229883.

---

*See footnote, *ante*, page 411.