Filed 1/21/14  P. v. Delgado CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ADAM DELGADO,<br><br>    Defendant and Appellant. | B244906<br><br>(Los Angeles County<br>Super. Ct. No. KA088341) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert J. Perry, Judge.  Affirmed.

Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

A jury convicted defendant, Adam Delgado, of first degree murder.  (Pen. Code, §187, subd. (a)).[1]  The jury further found true criminal street gang, knife use and handgun use enhancements.  (§§ 186.22, subd. (b)(1)(C), 12022, subd. (b)(1), 12022.53, subds. (d), (e)(1).)  The trial court sentenced defendant to an indeterminate term of 50 years to life in state prison plus a determinate term of one year.  We affirm the judgment.

# II.  THE EVIDENCE

Eyewitnesses identified defendant as one of several gang members who assaulted and, ultimately, killed a young African-American man, Marquis Le Blanc.  The assault and murder occurred after Mr. Le Blanc brandished a firearm in the presence of gang members.  One of the eyewitnesses, Arturo Casas, saw defendant stab Mr. Le Blanc in the chest several times with a knife.  The gang members were known for their hatred of African-Americans.  The assault was accompanied by shouts of "Get that nigger," and words to that effect, together with gang references.  Mr. Le Blanc died of a stab wound to the heart followed by a gunshot wound to the head.

Defendant testified in his own defense.  He admitted he was a member of a gang that hated African-Americans.  Defendant testified that despite the gang's animosity, he did not hate African-Americans.  Defendant admitted being present when Mr. Le Blanc was assaulted and killed.  He denied possessing a knife  and participating in the aggravated assault.  Defendant denied stabbing Mr. Le Blanc.

---

[1] Further statutory references are to the Penal Code unless otherwise noted.

III.  DISCUSSION


A.  Instructional Error

Defendant argues the jurors should have been instructed that in evaluating credibility they could consider whether a witness was promised immunity or leniency in exchange for testimony.  Defendant asserts the trial court had a sua sponte duty to so instruct pursuant to CALCRIM No. 226.**²**  Defendant notes Mr. Casas, a key witness, had

---

² CALCRIM No. 226 states:  "You alone must judge the credibility or believability of the witnesses. In deciding whether testimony is true and accurate, use your common sense and experience. You must judge the testimony of each witness by the same standards, setting aside any bias or prejudice you may have.  [¶]  You may believe all, part, or none of any witness's testimony. Consider the testimony of each witness and decide how much of it you believe.  [¶]  In evaluating a witness's testimony, you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony. Among the factors that you may consider are:  [¶]  How well could the witness see, hear, or otherwise perceive the things about which the witness testified?  [¶]  How well was the witness able to remember and describe what happened?  [¶]  What was the witness's behavior while testifying?  [¶]  Did the witness understand the questions and answer them directly?  [¶]  Was the witness's testimony influenced by a factor such as bias or prejudice, a personal relationship with someone involved in the case, or a personal interest in how the case is decided?  [¶]  What was the witness's attitude about the case or about testifying?  [¶]  Did the witness make a statement in the past that is consistent or inconsistent with his or her testimony?  [¶]  How reasonable is the testimony when you consider all the other evidence in the case?  [¶]  [Did other evidence prove or disprove any fact about which the witness testified?]  [¶]  [Did the witness admit to being untruthful?]  [¶]  [What is the witness's character for truthfulness?]  [¶]  [Has the witness been convicted of a felony?]  [¶]  [Has the witness engaged in [other] conduct that reflects on his or her believability?]  [¶]  [*Was the witness promised immunity or leniency in exchange for his or her testimony?*]  [¶]  Do not automatically reject testimony just because of inconsistencies or conflicts. Consider whether the differences are important or not. People sometimes honestly forget things or make mistakes about what they remember. Also, two people may witness the same event yet see or hear it differently.  [¶]  [If the evidence establishes that a witness's character for truthfulness has not been discussed among the people who know him or her, you may conclude from the lack of discussion that the witness's character for truthfulness is good.]  [¶]  [If you do not believe a witness's testimony that he or she no longer remembers something, that testimony is inconsistent with the witness's earlier statement on that subject.]  [¶]  [If you decide that a witness deliberately lied about something significant in this case, you should

3

an agreement with the prosecution concerning his testimony.  Mr. Casas was charged with robbery for stealing Mr. Le Blanc's sneakers.  Mr. Casas was the sole witness to testify defendant stabbed Mr. Le Blanc.  Defendant was represented at trial by Anthony Robusto.  Defendant asserts Mr. Robusto was ineffective for failing to request instruction on leniency as it affects credibility.

Any error was harmless under any standard.  (*Chapman v. California* (1967) 386 U.S. 18, 22; *People v. Watson* (1956) 46 Cal.2d 818, 836.)  And because there was no prejudice, defendant cannot establish Mr. Robusto was ineffective.  (*Strickland v. Washington* (1984) 466 U.S. 668, 697; *In re Crew* (2011) 52 Cal.4th 126, 150; *People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.)  First, Mr. Casas told law enforcement officers defendant was the person who stabbed Mr. LeBlanc.  Mr. Casas made this disclosure before he was charged with robbery and subsequently offered a leniency agreement. Second, the leniency agreement between Mr. Casas and the prosecution was entered into evidence.  Mr. Casas agreed that in return for his truthful testimony:  he would *not* receive probation; he would be sentenced to state prison for robbery; the term of imprisonment would be between two and five years; and the exact sentence would be determined by a neutral magistrate.

Third the prosecutor, Deputy District Attorney John McKinney, addressed the leniency agreement at length in closing argument to the jury.  Mr. McKinney explained in part:  "Now, for purposes of assessing [Mr. Casas's] credibility, you can view [the leniency agreement] in the light most favorable to the defendant, which is to assume a judge will probably give [Mr. Casas] the low term at least he thinks and hopes that a judge will give him the low term.  And I can tell you that his participation and the fact that he's snitching and what that means is so significant that it would probably be difficult for any fair minded person to want to give him the high term as opposed to the

consider not believing anything that witness says. Or, if you think the witness lied about some things, but told the truth about others, you may simply accept the part that you think is true and ignore the rest.]"  (Italics added.)  The present jury was so instructed with the exception of the italicized language.

low term, but in assessing his credibility you're assessing his state of mind and what's motivating him to come in here and tell the truth, or he is telling the truth. [¶] You can assume that he's trying to get the lowest possible prison that he can, but the agreement he made doesn't change his position much at all from if he had just walked into court on the first day he was charged with robbery and said, I want to plead guilty, judge. I'll make my argument for why I deserve the lower term as opposed to the higher term, get sentenced, get either probation or prison and go in there without a snitch jacket. [¶] Going to prison as a snitch is a big deal based on what you've heard in this case, particularly someone who snitches against [defendant's gang]. And Mr. Casas was so concerned about it, you heard his testimony that he was asking me questions about being beaten up in prison or even being raped in prison as retaliation for snitching. You heard the consequences for snitching, anything from a beating, up to and including death. It would have been far easier for Mr. Casas to say, I'll take my chances with a judge. I am not going to snitch. Who knows, he could have got probation. He could have got two years anyway. [¶] Sometimes with these agreements the prosecution gives a witness so much that a juror thinks, how can I trust him? Anybody would say anything to get the reduction that the prosecution is putting . . . on the table in front of this witness. That didn't happen here. The agreement is not much of an inducement at all. I submit to you that Casas is motivated by what made him cry when he saw [the picture of the victim]."

Fourth, defense counsel, Mr. Robusto, also addressed Mr. Casas's credibility in closing argument to the jury. Mr. Robusto argued in part: "You have Mr. Casas who is obviously . . . induced to testify. He's induced to testify based upon the leniency agreement, based upon . . . Mr. McKinney interviewing him hoping that . . . he would say things that would assist Mr. McKinney."

Fifth, in rebuttal argument, Mr. McKinney noted: "[A]s you know from the agreement, my explanation of the agreement and the documents, which you'll have an opportunity to read, [Mr. Casas] really gets no benefit out of testifying in court. A minor benefit he gets. But when he talked to the police and said [defendant] was the one with the knife getting [Mr. Le Blanc], there was no benefit. There was no discussion . . . there

5

was no inducement for him to say that." Sixth, the jury was instructed to use common sense and experience in considering each witness's credibility. This included whether any witness's testimony was influenced by any factor such as bias or personal interest in the outcome of the case. Given the foregoing there is no question the jury understood it could consider the more lenient duration of the state prison terms promised to Mr. Casas in evaluating his believability. Any instruction omission concerning leniency was harmless beyond a reasonable doubt.

## B. Ineffective Assistance of Counsel

Defendant also contends Mr. Robusto was ineffective for failing to request instruction pursuant to CALCRIM No. 522. CALCRIM No. 522 embodies the rule that provocation inadequate to reduce murder to manslaughter may nevertheless raise a reasonable doubt whether the defendant willfully killed with deliberation and premeditation. (*People v. Avila* (2009) 46 Cal.4th 680, 707; *People v. Carasi* (2008) 44 Cal.4th 1263, 1306.) The trial court had no duty to instruct with CALCRIM No. 522 absent a request. (*People v. Rogers* (2006) 39 Cal.4th 826, 877-879; *People v. Mayfield* (1997) 14 Cal.4th 668, 778.)

Our Supreme Court discussed the requirements of an ineffective assistance of counsel claim in *People v. Fairbank, supra,* 16 Cal.4th at page 1241: "[W]hen considering a claim of ineffective assistance of counsel, 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' (*Strickland v. Washington*[, *supra*,] 466 U.S. [at p.] 697.) A defendant must prove prejudice that is a '"demonstrable reality," not simply speculation.' (*People v. Williams* (1988) 44 Cal.3d 883, 937, quoting *People v. Stephenson* (1974) 10 Cal.3d 652, 661.) Prejudice requires 'a reasonable probability that a more favorable outcome would have resulted . . . , i.e., a probability sufficient to

6

undermine confidence in the outcome.' (*In re Clark* (1993) 5 Cal.4th 750, 766, citing *Strickland v. Washington, supra*, 466 U.S. at pp. 693-694.)" (Accord, *In re Crew, supra*, 52 Cal.4th at p. 150.)

As noted above, CALCRIM No. 522 embodies the rule that provocation inadequate to reduce murder to manslaughter may nevertheless raise a reasonable doubt whether the defendant willfully killed with deliberation and premeditation.[3] (*People v. Avila, supra,* 46 Cal.4th at p. 707; *People v. Carasi, supra,* 44 Cal.4th at p. 1306.) Division One of the Court of Appeal for the Fourth Appellate District explained in *People v. Hernandez* (2010) 183 Cal.App.4th 1327, 1332: "First degree murder is an unlawful killing with malice aforethought, premeditation, and deliberation. (*People v. Chun* (2009) 45 Cal.4th 1172, 1181.) . . . Second degree murder is an unlawful killing with malice, but without the elements of premeditation and deliberation which elevate the killing to first degree murder. (*Ibid.*) To reduce a murder to second degree murder, premeditation and deliberation may be negated by heat of passion arising from provocation. (*People v. Fitzpatrick* (1992) 2 Cal.App.4th 1285, 1295-1296.) If the provocation would not cause an average person to experience deadly passion but it precludes the defendant from subjectively deliberating or premeditating, the crime is second degree murder. (*Ibid.*)." (Accord, *People v. Padilla* (2002) 103 Cal.App.4th 675, 678.) The existence, extent and effect of provocation on the defendant's mind in relation to premeditation and deliberation are factual questions for the jury to resolve. (*People v. Wolfe* (1954) 42 Cal.2d 663, 673; *People v. Thomas* (1945) 25 Cal.2d 880, 903-904.)

We find no prejudice to defendant. The jury was instructed on the difference between first and second degree murder: "A defendant is guilty of first degree murder as

---

[3] CALCRIM No. 522 states: "Provocation may reduce a murder from first degree to second degree [and may reduce a murder to manslaughter]. The weight and significance of the provocation, if any, are for you to decide. [¶] If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder. [Also, consider the provocation in deciding whether the defendant committed murder or manslaughter.]" (See also, CALJIC No. 8.73.)

a perpetrator or based on a theory of aiding and abetting if the People have proved that the perpetrator (i.e., the killer) acted willfully, deliberately, and with premeditation. The perpetrator acted willfully if he intended to kill. The perpetrator acted deliberately *if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill.* The perpetrator acted with premeditation if he decided to kill before completing the acts that caused death. [¶] The length of time the person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated. The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances. *A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated.* On the other hand, a cold, calculated decision to kill can be reached quickly. The test is the extent of the reflection, not the length of time. [¶] . . . [¶] The People have the burden of proving beyond a reasonable doubt that the killing was first degree murder rather than a lesser crime. If the People have not met this burden, you must find the defendant not guilty of first degree murder." (Italics added.) During deliberations, the jury inquired, "Distinction of 1st degree vs. 2nd degree murder." In response, the trial court reread the foregoing instructions.

In his argument to the jury, Mr. Robusto discussed defendant's testimony and credibility. Mr. Robusto noted defendant admitted being a gang member. Defendant admitted being present at the time Mr. Le Blanc was killed. He denied that he was armed with a knife. Defendant denied stabbing Mr. LeBlanc. Mr. Robusto never argued defendant committed the stabbing in heat of passion after Mr. Le Blanc brandished a handgun.

Given the evidence, instructions, and argument it is not reasonably probable the verdict would have been more favorable to defendant had Mr. Robusto requested the instruction with CALJIC No. 522. The instructions on deliberation and premeditation required the jury to consider defendant's mental state. In finding defendant guilty of first degree murder, the jury necessarily found defendant's decision to kill was not rash or impulsive but carefully considered. Consistent with the evidence, the jury found

8

defendant personally used a knife to murder Mr. Le Blanc. If the jurors believed defendant was so provoked he could not deliberate or premeditate, they would not have found him guilty of first degree murder. It is not reasonably probable a provocation instruction would have swayed the jury to find defendant not guilty of first degree murder. (See *People v. Avila, supra,* 46 Cal.4th at pp. 707-708; *People v. Fitzpatrick, supra,* 2 Cal.App.4th at pp. 1293-1296.)

### C. The Restitution and Parole Revocation Restitution Fines

Defendant claims the trial court erred in ordering him to pay a $240 restitution fine (§ 1202.4, subd. (b)) and a $240 parole revocation restitution fine (§1202.45). Defendant reasons: "At the time of [defendant's] sentencing proceeding, the minimum restitution and parole revocation [restitution] fine was $240. The trial court's imposition of this minimum fine reflects [its] intent to impose the statutory minimum fine. However, since the criminal conduct on which [defendant] was sentenced occurred in 2009, he was subject to the benefit of the law in effect at the time of the offense, i.e., a minimum restitution fine in the amount of $200. Accordingly, the restitution fine and parole revocation [restitution] fine must be reduced to $200.00."

Defendant did not object to the restitution fines in the trial court. However, defendant argues restitution in the amount imposed was not legally authorized. Therefore, the argument was not forfeited by the failure to object to the restitution fines in the trial court. (*People v. Kunitz* (2004) 122 Cal.App.4th 652, 657; *People v. Blackburn* (1999) 72 Cal.App.4th 1520, 1533-1534.) Defendant is correct that the law in effect when he committed the present offense must be applied to him. (*People v. Souza* (2012) 54 Cal.4th 90, 143; *People v. Hanson* (2000) 23 Cal.4th 355, 361-363.) When defendant committed the present murder, on April 17, 2009, former section 1202.4, subdivision (b)(1), authorized a restitution fine of not less than $200 or more than $10,000. (Stats. 2008, ch. 468, §1.) Section 1202.4, subdivision (b)(1) was amended effective January 1, 2012, to provide for a restitution fine of not less than $240 or more

9

than $10,000.  (Stats. 2011, ch. 358, § 1.)  That amendment, which postdates defendant's crime, is inapplicable to this defendant.  (*People v. Souza, supra,* 54 Cal.4th at p. 143; *People v. Hanson*, *supra*, 23 Cal.4th at pp. 361-367.)  Here, the trial court had the discretion to set the amount at any level between and including $200 and $10,000.  (Former §1202.4, subd. (b)(1) as amended by Stats. 2008, ch. 468, §1; *People v. Kramis* (2012) 209 Cal.App.4th 346, 350; *People v. Dickerson* (2004) 122 Cal.App.4th 1374, 1379.)  The $240 restitution fine imposed in this case was within that range.  We presume the trial court applied the law in effect at the time defendant committed the present offense and chose, in its discretion, to impose a $240 fine.  (Evid. Code, § 664; *In re Jacob J.* (2005) 130 Cal.App.4th 429, 437-438, disapproved on another point in *In re Julian R.* (2009) 47 Cal.4th 487, 499; *People v. Mosley* (1997) 53 Cal.App.4th 489, 496.)  Under section 1202.45, the parole revocation restitution fine is in the same amount as the section 1202.4, subdivision (b) restitution fine.  (*People v. Soria* (2010) 48 Cal.4th 58, 62; *People v. Smith* (2001) 24 Cal.4th 849, 851.)  There was no error.

IV.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFFICAL REPORTS

TURNER, P.J.

We concur:

MOSK                                                KRIEGLER, J.

10